[Sac. No. 7916. In Bank. Aug. 15, 1972.]

FEDERICO RIOS, a Minor, etc., Petitioner, v.
ROBERT C. COZENS, as Director, etc., et al., Respondents.

**COUNSEL**

Eugene M. Swann and Ronald F. Coles for Petitioner.

Dennis R. Powell, Maurice R. Jourdane, David H. Kirkpatrick, Richard A. Gonzales and Fred H. Altschuler as Amici Curiae on behalf of Petitioner.

Evelle J. Younger, Attorney General, and Victor D. Sonenberg, Deputy Attorney General, for Respondent.

---

**OPINION**

**MOSK, J.**—Under the financial responsibility laws (Veh. Code, §§ 16000-16553)[1] the Department of Motor Vehicles (hereinafter the department) will suspend the license of a driver who is involved in an automobile accident which has resulted in bodily injury or property damage in excess of $200 unless he either deposits security with the department sufficient in the opinion of the department to satisfy any final judgment against him up to a stated maximum or establishes his exemption from the security requirement by one of several methods, such as by showing that he was insured at the time of the accident.[2] However, as a condition of the suspension, the department must make a determination that there is a reasonable possibility that a judgment may be recovered against the driver, based upon his potential culpability. (*Orr* v. *Superior Court* (1969) 71 Cal.2d 220, 227-228 [77 Cal.Rptr. 816, 454 P.2d 712].)

■ The question involved in this proceeding is whether the driver is entitled to a hearing on the issue of his potential culpability prior to the suspension of his license or whether the department may make its determination, as it now does, merely on the basis of written accident reports which the persons involved in the accident are required to file (§ 16000) without affording the driver an opportunity to personally appear. We conclude that the determination of possible culpability by the department without affording the licensee an opportunity for a hearing does not comply with the requirements of due process, in view of the United States Supreme Court decisions in *Bell* v. *Burson* (1971) 402 U.S. 535 [29 L.Ed.2d 90, 91 S.Ct. 1586] and *Jennings* v. *Mahoney* (1971) 404 U.S. 25 [30 L.Ed.2d 146, 92 S.Ct. 180].

Petitioner is a minor who was involved in an automobile accident on

---

[1] All code references are to the Vehicle Code.

[2] In addition to suspension of the license of the driver of a vehicle involved in an accident, the financial responsibility law provides that the owner of the car must surrender his registration card and license plates to the department and store the car at his own expense if neither he nor the person who drove the car with his permission can comply with the security deposit requirement or establish an exemption. (§ 16100 et seq.)

March 18, 1971. The driver of the other vehicle in the accident filed a report with the department claiming that he had incurred property damage of $260. Petitioner also filed an accident report. The department, apparently on the basis of these reports, found there was a reasonable possibility that a judgment might be recovered against petitioner as a result of the accident. Since petitioner was uninsured and could not deposit security, his license was suspended. He asserted that he was not responsible for the accident and demanded a hearing to determine whether there was any likelihood that he would be found liable.

Upon the refusal of the department to grant a hearing, he filed a petition for a writ of mandate in an appellate court through his guardian ad litem. The petition seeks, on behalf of petitioner and others similarly situated, to compel respondents, the department and its director, to revoke the order of suspension issued to petitioner and others whose licenses were suspended without hearing, and to afford them notice and an opportunity to be heard on the question of their possible culpability.

Petitioner relies on numerous recent cases in which the United States Supreme Court and this court have recognized that an individual is constitutionally entitled to a hearing prior to being deprived of a significant interest. (*Goldberg* v. *Kelly* (1970) 397 U.S. 254, 266 [25 L.Ed.2d 287, 298, 90 S.Ct. 1011]; *Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337, 342 [23 L.Ed.2d 349, 354, 89 S.Ct. 1820]; *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 547 [96 Cal.Rptr. 709, 488 P.2d 13].) This principle is applicable to a plethora of vital personal and property rights (see *Randone* v. *Appellate Department, supra,* 5 Cal.3d 536, 548, fn. 8), but it has most frequently been applied in this state to invalidate statutes affording a creditor prejudgment remedies against a debtor without prior notice or hearing (see e.g., *Blair* v. *Pitchess* (1971) 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242]; *McCallop* v. *Carberry* (1970) 1 Cal.3d 903 [83 Cal.Rptr. 666, 464 P.2d 122]; *Cline* v. *Credit Bureau of Santa Clara Valley* (1970) 1 Cal.3d 908 [83 Cal.Rptr. 669, 464 P.2d 125]).

The rule explicated in the foregoing cases is applicable to the instant circumstances. A person's interest in the retention of his driver's license and in the use of his motor vehicle represents a sufficiently important benefit to justify the requirement that he be accorded a hearing, before he is deprived of those rights, to determine whether there is a reasonable possibility that a judgment will be recovered against him.

Petitioner emphasizes that the rural and urban poor, who cannot afford to purchase insurance or to post security, are frequently faced with license

suspension under the financial responsibility law, and that a person deprived of the right to drive may forfeit his employment and suffer other disabilities. If there had been any lingering doubt about the importance of the right to a driver's license, it has been dispelled by *Bell* v. *Burson, supra,* 402 U.S. 535, in which the court stated, "Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees." (402 U.S. at p. 539 [29 L.Ed.2d at p. 94].)

We observe, as a second factor justifying a presuspension hearing, that the primary purpose of the financial responsibility law is not to assure that careless drivers are denied the use of the highways—since the most grossly negligent drivers who can post security or are exempt from complying with the requirement may retain their licenses—but, rather, to afford monetary protection to those who suffer injury or property damage by virtue of the carelessness of financially irresponsible drivers. (*Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, 671 [79 Cal. Rptr. 106, 456 P.2d 674].) We do not denigrate the desirability of making whole the victims of automobile accidents. But viewed in this economic context, the purpose of the statutes under consideration bears a remarkable relationship to prejudgment creditor's remedies and therefore does not justify a difference in treatment with regard to the right to a presuspension hearing.

Nevertheless, respondents argue, this court decided in *Escobedo* v. *State of California* (1950) 35 Cal.2d 870, 876-877 [222 P.2d 1] and *Orr* v. *Superior Court, supra,* 71 Cal.2d 220, 224-225, that due process is not violated by the suspension of a license without a prior hearing if the department's action is subject to subsequent judicial review.

Two years after our decision in *Orr* v. *Superior Court, supra,* 71 Cal.2d 220, the United States Supreme Court heard *Bell* v. *Burson, supra,* 402 U.S. 535, in which the precise question was whether the State of Georgia could validly suspend the driver's license of an uninsured motorist who could not post security without affording him a hearing prior to revocation on the question of his responsibility for the mishap. The high court determined that a driver may not constitutionally be deprived of his license without a prior hearing to determine whether there is a reasonable possibility that a judgment would be rendered against him as a result of the accident. Insofar as a determination of possible fault is required before suspension our earlier opinions in *Escobedo* v. *State of California, supra,* 35 Cal.2d 870 and *Orr* v. *Superior Court, supra,* 71 Cal.2d 220, are consistent with the principles of *Bell.*

The significance of *Bell*, however, is that the decision not only requires a prior determination of culpability as a condition of suspension but that it leaves no doubt such a determination must be made in the context of a hearing. Georgia actually provided a hearing prior to suspension, but the proceeding was confined to such questions as whether the driver was in fact involved in the accident and whether he came within any of the statutory exemptions. The high court held that in providing a forum to decide the question of possible liability Georgia could elect to include this issue at the hearing already provided by its laws (402 U.S. at pp. 542-543 [29 L.Ed.2d at pp. 96-97]), that the additional expense to the state was not a sufficient reason to deny a hearing (402 U.S. at p. 540 [29 L.Ed. 2d at p. 95]), and that the hearing required by due process must be meaningful (402 U.S. at pp. 541-542 [29 L.Ed.2d at pp. 95-96]). The opinion concludes that the failure of Georgia's statutory scheme to afford the petitioner a hearing prior to suspension on the question of liability denied him due process of law.

We are called upon, then, to examine the procedure followed in this state to determine if it satisfies the requirements of *Bell* v. *Burson, supra,* 402 U.S. 535. Under our statutes, as stated above, any driver who is involved in an automobile accident which results in bodily injury or in property damage in excess of $200 must file a written accident report with the department within 15 days after the mishap. (§ 16000.)[3] The report contains an account of the driver's version of the accident, as well as information indicating whether he was insured, and estimating the amount of damage incurred. The department makes its determination of possible liability from the substance of these reports. A licensee is not entitled to a personal hearing, and it is not even clear that he is permitted, prior to suspension, to examine the information upon which the department has based its decision.[4]

---

[3]Section 40833 provides that neither this report nor the department's action thereon shall be referred to in any way or be admissible as evidence of the negligence or due care of any party at the trial of any action at law to recover damages.

[4]According to petitioner, it is the department's policy to refuse to reveal the contents of the opposing driver's report unless and until a court action is filed seeking review of the suspension. The Attorney General, representing the department, acknowledges that this has been the department's policy in the past and states that it was due to a misunderstanding of the law. This lapse has now been corrected, it is asserted, and orders have been issued to department employees that a driver involved in an accident is entitled to see the reports filed by other parties and witnesses prior to the time he files an *action for court review*. Although this policy statement does not provide that a driver threatened with suspension may review the evidence submitted to the department prior to the effective date of *suspension by the department,* we assume that such is the intent of the order, however inartfully drawn,

We conclude that this procedure does not comply with the command of *Bell* v. *Burson, supra,* 402 U.S. 535, that a hearing be granted prior to license suspension for a failure to comply with the financial responsibility law.[5] In *Jennings* v. *Mahoney, supra,* 404 U.S. 25, decided a few months after *Bell,* the appellant challenged Utah's procedure for determining whether her driver's license should be suspended under that state's financial responsibility law. There, as here, the issue of possible liability for her accident was determined from the accident reports filed with the appropriate department, and the motorist was not given an opportunity to offer evidence and cross-examine witnesses. It was held that there was "plainly a substantial question whether the Utah statutory scheme on its face affords the procedural due process required by *Bell* v. *Burson.*" (404 U.S. at p. 26 [30 L.Ed.2d at p. 148].) However, the Supreme Court did not find the issue ripe for decision since the trial court, apparently doubtful of the due process qualities of the administrative proceedings, had stayed the suspension order and conducted a full judicial evidentiary hearing on the propriety of the suspension.[6] At least two jurisdictions have interpreted *Bell* as imposing a requirement for a hearing prior to suspension under the financial responsibility law. (*Pollion* v. *Lewis* (N.D. Ill. 1971) 332 F.Supp. 777; *MacBeth* v. *State of Utah* (C.D. Utah 1971) 332 F.Supp. 1191.)

Respondents do not seriously contend that the procedure followed by the department constitutes a hearing on the issue of possible culpability. They assert, however, that because the scope of the determination to be

---

in view of the Attorney General's concession in his brief that it would be "unthinkable" to permit an agency to base its decision upon evidence not disclosed to the affected party.

[5]Petitioner asserts that the department's procedure provides him with no hearing whatever. He states that because the department is required to decide only whether it is reasonably possible that he was liable for the accident, almost any discrepancy between opposing reports would justify a decision against him. The others involved in the accident may omit pertinent matters or may simply falsify their reports in an attempt to force petitioner to pay their claims of damage or suffer the suspension of his license. If he is not afforded the opportunity to challenge these errors or misstatements at a hearing before the department he is forever precluded from a meaningful opportunity to defend his version of the accident to avoid a suspension. He is not entitled to a trial de novo even if he seeks court review of the department's determination since on review a court must rely solely upon evidence submitted to the department. (*Orr* v. *Superior Court, supra,* 71 Cal.2d 220, 228.)

[6]*Richardson* v. *Wright* (1972) 405 U.S. 208 [31 L.Ed.2d 151, 92 S.Ct. 788] is not helpful. Faced squarely with the issue of the right to an oral presentation before loss of welfare benefits, the court decided, in view of new departmental regulations, that "the appropriate course is to withhold judicial action pending reprocessing, under the new regulations, of the determinations here in dispute." The dissents of Justices Brennan, Douglas, and Marshall to the order stressed the continued viability of *Goldberg* v. *Kelly, supra,* 397 U.S. 254.

made by the department is restricted to whether there is credible evidence of a reasonable possibility of the driver's culpability and the question of actual fault is not in issue, it is sufficient if the department makes its determination on the basis of the written reports.

This posture is in conflict with both *Bell* v. *Burson, supra,* 402 U.S. 535, and *Jennings* v. *Mahoney, supra,* 404 U.S. 25. Manifestly that the department is required only to decide whether there is a reasonable possibility of a judgment against the driver does not render a hearing inconsequential. Certainly it is not inconceivable that a licensee may be able to demonstrate to the department, if given the opportunity to do so at a hearing, that there is no reasonable possibility that a judgment will be rendered against him.[7]

It necessarily follows that *Escobedo* v. *State of California, supra,* 35 Cal.2d 870, and *Orr* v. *Superior Court, supra,* 71 Cal.2d 220, are overruled insofar as they hold that a licensee is not entitled to a hearing, prior to the suspension of his license, to determine whether there is a reasonable possibility that a judgment may be recovered against him. We hold that a hearing is required and that at such a hearing the licensee is entitled to review the reports or other evidence upon which the department contemplates determining that he is possibly responsible for the accident, and to present reports or testimony to establish his claim of nonculpability, all within reasonable due process procedures which the department may employ.

The licensee must be afforded the opportunity to make his presentation personally rather than in writing, under the holding of the United States Supreme Court in *Goldberg* v. *Kelly, supra,* 397 U.S. 254, 268-269 [25 L.Ed.2d 287, 299-300]. In *Goldberg,* it was held that the New York Department of Social Services must permit a welfare recipient to appear personally at a hearing prior to the termination of public assistance payments. The high court reasoned (inter alia) that the opportunity to make a written presentation was insufficient because many recipients do not possess the educational attainment necessary to write effectively and would find it difficult to obtain professional assistance. The same rationale is applicable to the situation involved in the present case. Many persons threatened with license suspension lack the ability to make an adequate

---

[7]Respondents place great reliance upon *Rivas* v. *Cozens* (N.D.Cal. 1971) 327 F.Supp. 867, which was reconsidered in a memorandum decision not published in the reports. Although the district court in its memorandum decision found the California procedure to be in conformity with *Bell,* that decision was rendered prior to the filing of the Supreme Court's opinion in *Jennings,* and we do not find the district court's reasoning to be persuasive.

written presentation of their position to the department and lack the resources to obtain professional help to forcefully prepare their assertions.

Petitioner is entitled to a writ of mandate commanding respondents to revoke the order suspending his license and to provide him with an opportunity for a hearing. He also seeks to compel respondents to reinstate the licenses of those persons whose driving privileges were previously suspended under the financial responsibility law, until respondents grant them a hearing on the issue of their possible culpability. We do not deem it necessary to require respondents to vacate suspension orders previously issued, other than the order issued to petitioner. However, those whose licenses are currently under suspension because of their failure to comply with the requirements of the financial responsibility law are entitled to a hearing if they so request.

Finally, petitioner prays for damages allegedly suffered as the result of the illegal suspension of his license. He cites no authority and has presented neither evidence nor argument to justify an award of damages in this mandamus proceeding. The denial of a damage award is proper.

Let a writ of mandate issue directing respondents to revoke the order suspending petitioner's license and to provide petitioner, upon due notice, a hearing on the suspension of his license.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.