Samuel McKINNEY, Plaintiff,

v.

Thomas D. O'MALLEY, Individually and as Insurance Commissioner and Treasurer, Department of Insurance, State of Florida, and Ralph L. Cobb, Sr., Individually and as Chief, Bureau of Financial Responsibility, Department of Insurance, State of Florida, Defendants.

No. 73-57-Civ-J-T.

United States District Court,
M. D. Florida,
Jacksonville Division.

Aug. 6, 1974.

Steven Goldberg and Paul D. Doyle, Duval County Legal Aid Ass'n, Jacksonville, Fla., for plaintiff.

Harold B. Haimowitz, Asst. Atty. Gen., Jacksonville, Fla., for defendants.

Before SIMPSON, Circuit Judge, EATON and TJOFLAT, District Judges.

## MEMORANDUM OPINION

TJOFLAT, District Judge

Plaintiff, Samuel McKinney, brought this action attacking the constitutionality of Section 324.051(2), Florida

Statutes, as applied to him. McKinney contends that the state has deprived him of substantive due process of law by suspending his driver's license for failure to meet certain statutory requirements which his financial status precludes him from satisfying. Resting jurisdiction on Title 28, United States Code, Section 1343(3), McKinney seeks declaratory relief under Title 28, United States Code, Section 2202, and Title 42, United States Code, Section 1983; and whatever other relief the Court may deem proper. The case is now before a three-judge panel convened pursuant to Title 28, United States Code, Sections 2281 and 2284, having been presented for final determination after a pre-trial agreement as to the factual matters involved.

McKinney is a fifty-five-year-old man with an eleventh grade education. He has been a taxicab driver in Jacksonville, Florida continuously since 1961. His average income of $55 per week constitutes the sole source of support for him and his wife. On June 25, 1972, while driving a borrowed car, McKinney was involved in a collision with another vehicle. Neither McKinney nor the owner of the car he was driving carried liability insurance at the time of the accident. The Florida Bureau of Financial Responsibility subsequently advised McKinney that, if he failed to comply with the requirements of Section 324.-051(2), Florida Statutes, his driver's license would be suspended. On October 27, 1972, McKinney requested a hearing pursuant to the Rules of the Department of Insurance.[1] This application resulted in an automatic stay of any order of suspension pending the hearing.[2] As a result of the hearing, the Bureau of Financial Responsibility determined that there was a "reasonable possibility" of a civil judgment for damages against McKinney as a result of the accident. Following review and affirmance of this decision by the Bureau's chief, McKinney was given thirty days to comply with the provisions of the Financial Responsibility Law (Chapter 324, Florida Statutes) as required by Section 324.-051(2) thereof.

Section 324.051(2) provides, *inter alia,* for suspension of the license of an uninsured driver involved in an accident resulting in bodily injury, death, or $200 property damage unless he can satisfy one of the seven exceptions set forth therein.[3] Since McKinney's accident did

1. Fla.Dept. of Ins., Rules § 4–0.10.

2. *Id.* § 4–0.11.

3. Section 324.051(2), Florida Statutes, provides:

(2)(a) Thirty days after receipt of notice of any accident involving a motor vehicle within this state which has resulted in bodily injury or death to any person, or total damage of two hundred dollars or more to property, the department shall suspend the licenses of the operators and all registrations of the owners of the vehicles involved in such accident and in case of a nonresident owner or operator, shall suspend such nonresident's operating privilege in this state, unless such operator or owner shall prior to the expiration of such thirty days be found by the department to be exempt from the operation of this chapter, based upon evidence in its files satisfactory to the department that:

1. No injury was caused to the person or property of anyone other than such operator or owner, or

2. The motor vehicle was legally parked at the time of such accident, or

3. The motor vehicle was owned by the United States government, this state, any political subdivision of this state or any municipality therein, or,

4. Such operator or owner had been finally adjudicated not to be liable by a court of competent jurisdiction, or

5. Such operator or owner had secured a duly acknowledged written agreement providing for release from liability by all parties injured as the result of said accident and had complied with one of the provisions of section 324.031, or

6. Such operator or owner has deposited with the department of insurance security to conform with sections 324.061 and has complied with one of the provisions of section 324.031, or

7. One year has elapsed since such owner or operator was suspended pursuant to section 324.051(4), the owner or operator has complied with one of the provisions of section 324.031, and no bill of complaint of which the department has notice has been filed in a court of competent jurisdiction.

not fall within any of the special exemptions provided, and he had not been judicially exonerated from liability, his only means of avoiding license suspension was by proving his financial responsibility for future accidents as provided in Section 324.031,[4] and by either obtaining a release from liability from all persons injured in the accident or depositing security sufficient to compensate for the injuries as provided in Section 324.061.[5]

Unable to obtain releases or to post the required security of $1,700, McKinney applied to the United States District Court for an injunction to prevent the otherwise inevitable suspension of his license. Relying on McKinney's representations that he is covered by his employer's liability policy while driving

---

(b) This subsection shall not apply:

1. To such operator or owner if such owner had in effect at the time of such accident an automobile liability policy with respect to the motor vehicle involved in such accident;

2. To such operator, if not the owner of such motor vehicle, if there was in effect at the time of such accident an automobile liability policy or bond with respect to his operation of motor vehicles not owned by him;

3. To such operator or owner if the liability of such operator or owner for damages resulting from such accident is, in the judgment of the commissioner, covered by any other form of liability insurance or bond; nor

4. To any person who has obtained from the commissioner a certificate of self-insurance in accordance with § 324.171 or to any person operating a motor vehicle for such self-insurer.

No policy or bond shall be effective under this subsection unless it contains limits of not less than those specified in § 324.021(7).

4. Section 324.031, Florida Statutes, provides: The operator or owner of a motor vehicle may prove his financial responsibility by:

(1) Furnishing satisfactory evidence of holding a motor vehicle liability policy as defined in § 324.021(8) and § 324.151, or

(2) Posting with the state treasurer of a satisfactory bond of a surety company authorized to do business in this state, conditioned for payment of the amount specified in § 324.021(7), or

(3) Furnishing a certificate of the state treasurer showing a deposit of cash or securities in accordance with § 324.161, or

(4) Furnishing a certificate of self-insurance issued by the commissioner in accordance with § 324.171.

5. Section 324.061, Florida Statutes, provides as follows:

(1) Security deposited pursuant to the provisions of § 324.051(2)(f) with respect to claims for injuries to persons or properties resulting from an accident occurring prior to such deposit shall be in the form and amount determined by the commissioner which, in his judgment, will be sufficient to compensate for all injuries arising out of such accident but in no case shall the amount exceed the limits specified in § 324.021(7).

(2) Such security shall be deposited with the department and shall not be released except under one of the following conditions:

(a) A duly attested written statement of satisfaction by all parties shown to be injured in such accident has been received by the commissioner, or

(b) In the event the depositor has been finally adjudicated by a court of competent jurisdiction not to be liable; or all judgments of liability against the depositor have been satisfied, or

(c) One year shall have elapsed after deposit and during such period the commissioner has not been duly notified of any court action brought for damages.

(d) Upon receipt of an order from a court ordering that such a deposit be paid to satisfy a recorded judgment, in whole or in part, resulting from an accident. If the commissioner does not have sufficient funds on deposit to satisfy such judgment he shall forthwith call upon the judgment debtor for the balance, subject to the limits specified in § 324.021(7). Upon failure of the judgment debtor to make the necessary deposit or to satisfy the judgment in full, the commissioner shall revoke the driving privilege and all registrations of such judgment debtor within ten days subsequent to notification to the judgment debtor by the commissioner.

(e) In any case in which securities deposited under this section have remained unclaimed for five years or more such deposit shall be transferred by the department to the state school fund, and all interest and income that may accrue from said deposits after the aforesaid period of time, shall belong to said fund.

(3) The department of insurance shall invest security deposits in its custody received under this section in excess of current needs in interest bearing accounts. The interest earned from such investments shall be deposited in the insurance commissioner's regulatory trust fund and any security deposits remaining unclaimed after five (5) years shall be transferred to the state school fund as provided in subsection (2) above.

a taxicab in the course of his employment and that suspension would cause him irreparable damage, the Court, on February 8, 1973, temporarily restrained defendants from suspending McKinney's license insofar as his employment is concerned pending resolution of the constitutional issues in this case. That order is still in effect.

McKinney contends that the purposes of the Statute are: (1) to assure that uninsured drivers, once involved in an accident, whose liability is a "reasonable possibility" will not cause damage or injury to others in the future with a motor vehicle unless they are able to fulfill their resulting financial obligation as required by law; and (2) to encourage such uninsured drivers to fulfill their resulting financial obligations to those involved in the first accident. McKinney concedes that both goals are legitimate, but argues that the Statute is invalid as applied to him because its scheme for achieving the first goal operates with fatal over-breadth by suspending the licenses of those drivers who unquestionably satisfy the statutory concern, and because its scheme for achieving the second goal frustrates, rather than promotes, that goal.

With regard to the first point, McKinney argues that the only relief he seeks herein is retention of his driver's license for employment purposes, the very relief he currently enjoys under the Court's temporary restraining order. While driving for his employer, McKinney is covered by his employer's liability insurance, and therefore the first statutory goal—financial responsibility for future accidents—is satisfied even though McKinney has not complied with the contested Statute. In passing on McKinney's claim that the statute deprives him of substantive due process of law,[6] the only inquiry is whether the

Statute's goals are illegitimate, its means irrational, or its impact on protected interests so severe in light of the alternatives that an otherwise valid statute is rendered unreasonable. Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). McKinney appeals to the Court's discretion within the latter area of inquiry by urging that the Statute unnecessarily deprives him of a driver's license for employment driving.

The Court recognizes that for someone with McKinney's educational background and experience a driver's license may constitute the only means of livelihood and that suspension may result in his addition to the rolls of those receiving unemployment compensation. These considerations, however, must be viewed in light of the state's legitimate basis for not exempting McKinney from the statutory requirements. The legislature may have rationally concluded that, although allowing McKinney to drive for his employer would satisfy the first statutory goal, enforcement of such a restriction on McKinney's license to drive would be extremely difficult. In order for McKinney to be covered by his employer's policy, he must use the employer's vehicle with the employer's consent and in the normal course of its business. Whether, in a given accident case, McKinney was operating his cab in the discharge of his employer's business and with its consent so to bring him within the employer's policy coverage may involve close examination of a complex set of facts. Furthermore, were the legislature to allow restricted licenses for employment driving, could it not be made to allow special licenses for any person

6. McKinney makes no claim of denial of procedural due process of law. Indeed, the procedures established by the Florida Department of Insurance would appear to comply with the procedural requirements as set forth in Bell v. Burson, 402 U.S. 535, 91 S. Ct. 1586, 29 L.Ed.2d 90 (1971). *See also* Jennings v. Mahoney, 404 U.S. 25, 92 S.Ct. 180, 30 L.Ed.2d 146 (1971); Rios v. Cozens, 7 Cal.3d 792, 103 Cal.Rptr. 299, 499 P.2d 979 (1972).

wishing to be restricted to driving situations where he would be covered by the insurance of another, employer or not, as well? Thus, could not McKinney use his argument with equal force in an attempt to secure a license restricting him to driving his neighbor's car with consent? The enforcement problems that such a situation would engender are obvious. The Court will not presume to sit in judgment over the legislature's determination that such extensions of the statutory scheme are undesirable in light of the administrative and enforcement difficulties inherent therein. Such a determination does not embody the unreasonableness envisioned by the doctrine of substantive due process of law.

In connection with the second aspect of the statutory scheme—that McKinney either obtain releases from those involved in his accident or post security sufficient to cover their claims—McKinney argues that suspension of his license would deprive him of his only means of becoming financially capable of satisfying a judgment entered against him. McKinney therefore contends that suspension of his license for employment driving bears no rational relationship to, but rather frustrates, the legislative goal of compensation for the victims of his first accident. The Court does not dispute that McKinney is in fact financially unable to post the required security. The Court feels, however, that McKinney has not analyzed closely enough the legislative goal involved in this portion of the statutory scheme. The general goal of compensation for victims of an insured's first accident can, in the long-run, be achieved by encouraging people to buy liability insurance before they have an accident, as well as by encouraging them to post security afterwards.[7] The scheme can thus be

viewed as a deterrent to those who would otherwise drive without insurance and may be faced with a security deposit they cannot satisfy. The scheme thus encourages persons in McKinney's position either to buy insurance or not drive in situations where they are not covered by someone else's insurance. McKinney did neither, and he must now suffer the penalty of a suspended driver's license.

---

7. While it is possible that McKinney can afford to do neither, this does not alter the outcome. It has long been established that a state may, in the exercise of its police powers, require either compulsory insurance or a security deposit as a precondition to issuance of a driver's license. Ex parte Po-

resky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Rivas v. Cozens, 327 F.Supp. 867 (N.D.Cal.1971); Ortiz v. DePuy, 313 F. Supp. 156 (E.D.Pa.1970); Perez v. Tynan, 307 F.Supp. 1235 (D.Conn.1969). In fact, Florida has since adopted such requirements. F.S.A. § 627.731 et seq. (1972).