[No. B031878. Second Dist., Div. Three. June 1, 1989.]

MARILYN BENNETT, Plaintiff and Appellant, v. NEIL ROY BODILY, Defendant and Respondent.

COUNSEL

Maginnis & Maginnis and J. Patrick Maginnis for Plaintiff and Appellant.

Donald Perry Rhoads for Defendant and Respondent.

Ian Herzog, Evan D. Marshall and Paul L. Hoffman as Amici Curiae, upon the request of the Court of Appeal.

Opinion

ARABIAN, J.—

## Introduction

Plaintiff and appellant Marilyn Bennett (Bennett), an uninsured motorist involved in an automobile collision, obtained an arbitration award of $13,500 as recompense for personal injuries caused by the negligent driving of defendant and respondent Neil Roy Bodily (Bodily).

Alleging personal injuries arising from the same collision to himself, Bodily sought and received $15,000 from his insurer under his uninsured motorist protection. Bennett was without notice and had no access or involvement in these proceedings.

The superior court, acting under the compulsion of Vehicle Code section 17200,[1] which provides for a reduction of judgment or settlement of amounts due an uninsured motorist by the amount paid to an insured under his uninsured motorist protection, nullified the award to plaintiff and entered judgment in favor of the negligent defendant.

As this appeal addresses the constitutionality of such summary confiscation, we find that section 17200 violates an uninsured motorist's rights to due process of law as guaranteed by the Constitutions of California and of these United States.

## Factual and Procedural Background

On May 2, 1985, Bennett filed a complaint against Bodily for property damage and personal injury arising out of a motor vehicle accident which occurred on February 15, 1985. Bodily answered the complaint with a general denial.

The matter was submitted to judicial arbitration and, on May 28, 1986, the arbitrator awarded Bennett $13,500. Neither party requested a trial de novo and, after the award became final in July, Bodily made an ex parte request in the superior court for a temporary restraining order staying execution of the judgment. Bodily contended that he sustained severe injuries as a result of the accident and, because Bennett was uninsured, he made a claim under his uninsured motorist coverage to Allstate Insurance Company (Allstate). Allstate paid him $15,000 under his uninsured motorist coverage and an additional $1,840.01 for property damage. He argued that pursuant to section 17200, the amount of the judgment against an insured

---

[1] All statutory references are to the Vehicle Code unless otherwise indicated.

defendant is reduced by the amount paid to the insured defendant under his uninsured motorist coverage, and therefore Bennett's judgment should be reduced to zero. The trial court issued an order to show cause and the requested temporary restraining order. Bennett opposed Bodily's request for an injunction on the grounds that the judgment was final, Bodily failed to raise section 17200 as an affirmative defense or litigate the issue at the arbitration, and the statute was unconstitutional.

The trial court granted the preliminary injunction preventing Bodily from enforcing judgment until a trial could be heard on the merits of a permanent injunction.

Thereafter, Bodily moved for summary judgment, arguing that as a matter of law section 17200 requires that judgment be entered in favor of Bennett in the amount of zero dollars. Bodily's motion was supported by the declaration of his attorney who related that Bennett's attorney was informed of the statutory setoff about September 27, 1985. She also declared that Bodily sought to depose the CHP officer who prepared the police report of the accident in order to prove that Allstate was justified in making the uninsured motorist payments to its insured, Bodily, but Bennett's attorney sought a protective order to preclude the deposition. Bodily submitted a copy of the police report which recommended that a complaint be filed against each party for violations of the Vehicle Code.

Bennett opposed Bodily's motion for summary judgment and moved for summary judgment herself. In support of her motion, Bennett's attorney declared that he was never informed of any opportunity to appear to contest the payment of any funds by Allstate to Bodily.

Summary judgment was entered in favor of Bodily and Bennett appealed.

## ISSUE

Does section 17200 deny the uninsured motorist due process of law guaranteed by the California and United States Constitutions?[2]

---

[2] Bennett also raised the following issues: Does the doctrine of res judicata bar application of section 17200?

Does section 17200 deprive an uninsured motorist of equal protection of the law? (Bennett refers to the deprivation of equal protection to a "non-tortious motorist," but the record does not establish whether or not Bennett was free of fault.)

Our analysis of section 17200 and the conclusion that the section violates procedural due process guarantees obviates the need to address these issues.

## DISCUSSION

### 1. Uninsured Motorist Insurance

Under the provisions of the Uninsured Motorist Act (Ins. Code, § 11580.2 et seq.) every automobile liability insurance policy issued or delivered in California must include, unless deleted by agreement, uninsured motorist coverage to compensate the insured, the insured's heirs or legal representative for damages for bodily injury or wrongful death inflicted by a financially irresponsible motorist. (Ins. Code, § 11580.2, subd. (a).)[3]

Of special significance to the issue before us is the provision of Insurance Code section 11580.2, subdivision (f): "The policy or an endorsement added thereto shall provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration. The arbitration shall be conducted by a single neutral arbitrator. *An award or a judgment confirming an award shall not be conclusive on any party in any action or proceeding between (i) the insured, his or her insurer, his or her legal representative, or his or her heirs and (ii) the uninsured motorist to recover damages arising out of the accident upon which the award is based.*" (Italics added.)

The insurer paying a claim under uninsured motorist coverage is entitled to be subrogated to the insured's rights against "any person legally liable for the injury or death to the extent that payment was made." (Ins. Code, § 11580.2, subd. (g).)

### 2. Financial Responsibility Legislation

California has adopted a number of penalties to encourage motorists to be financially responsible. The Financial Responsibility Law (§ 16000 et seq.) requires every driver and every owner of a motor vehicle at all times to maintain in force a form of financial responsibility, either by self-insurance, insurance or bond coverage, or other as specified. (§§ 16020, 16021.) ■■■■ A driver involved in an accident resulting in damage to the property of any one person in excess of $500 or in bodily injury or death (§ 16000) must demonstrate ability to respond in damages.[4]

---

[3]The insurance coverage does not apply to "bodily injury of the insured with respect to which the insured . . . shall, without the written consent of the insurer, make any settlement with or prosecute to judgment any action against any person who may be legally liable therefor." (Ins. Code, § 11580.2, subd. (c)(3).)

[4]The requirement that only those motorists who have been involved in certain specified accidents must prove financial responsibility regardless of whether they were at fault in the accident does not deny equal protection. (*Anacker* v. *Sillas* (1976) 65 Cal.App.3d 416 [135 Cal.Rptr. 537].)

Upon failure to prove the existence of financial responsibility at the time of the accident, the Department of Motor Vehicles (DMV) suspends the driving privileges of the driver or owner.[5] (§ 16070.) The suspension remains in effect for one year, but is extended in the event the person fails to file proof of financial responsibility or fails to maintain such proof. (§ 16072.)[6] Also, every driver, upon request of a peace officer at the time a citation for a traffic violation is issued, must produce written evidence of financial responsibility. Failure to do so is an infraction punishable by fine. (§ 16028.)

The Financial Responsibility Law was "fundamentally . . . designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through negligent use of those highways by others." (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 434 [296 P.2d 801, 57 A.L.R.2d 914].) "[T]he primary purpose of the financial responsibility law is not to assure that careless drivers are denied the use of the highways . . . but, rather, to afford monetary protection to those who suffer injury or property damage by virtue of the carelessness of financially irresponsible drivers." (*Rios* v. *Cozens* (1972) 7 Cal.3d 792, 796 [103 Cal.Rptr. 299, 499 P.2d 979], reinstated by *Rios* v. *Cozens* (1973) 9 Cal.3d 454 [107 Cal.Rptr. 784, 509 P.2d 696], which clarified the earlier opinion, upon remand from the United States Supreme Court, *Department of Motor Vehicles* v. *Rios* (1973) 410 U.S. 425 [35 L.Ed.2d 398, 93 S.Ct. 1019], vacating the cited opinion.)

"It is well established in California that the privileges conferred by a driver's license constitute an important property right (*Rios* v. *Cozens* (1972) 7 Cal.3d 792 [103 Cal.Rptr. 299, 499 P.2d 979]; *Bell* v. *Burson* (1971) 402 U.S. 535 [29 L.Ed.2d 90, 91 S.Ct. 1586]), although not so fundamental a right as to trigger a strict scrutiny analysis (*Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70 [177 Cal.Rptr. 566, 634 P.2d 917]). It is equally clear that before any criminal sanction is imposed for failure to establish financial responsibility, such as a fine, the state must comply with a panoply of procedures. Moreover, under the 1984 [Robbins-McAlister Financial Responsibility Act (Stats. 1984, ch. 1322)] a license can be suspended only after such an adjudication. Hence, at one level, there is ample 'due process' before any sanctions are imposed for lack of financial

---

[5] In *Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532 [189 Cal.Rptr. 512, 658 P.2d 1313], the California Supreme Court held that an accident report, which is hearsay, is an insufficient basis for suspension of the license of an uninsured motorist and a suspension based solely on such a report was a violation of due process. (See also *Himelspach* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 542 [189 Cal.Rptr. 518, 658 P.2d 1319].)

[6] Under certain circumstances, the DMV may simply restrict the person's driving privilege to travel necessary for employment. (§ 16072.)

responsibility." (*King* v. *Meese* (1987) 43 Cal.3d 1217, 1228 [240 Cal.Rptr. 829, 743 P.2d 889].)

3.   Section 17200

The Legislature added section 17200 to the Financial Responsibility Law in 1983. (Stats. 1983, ch. 1252, § 10.) The dictates of this section are clear and unambiguous: "Where an uninsured owner or operator has obtained a judgment against or agreed to a settlement with the owner or operator of an insured motor vehicle based on the negligence of the insured owner or operator, the amount of the judgment or settlement payable by the insured or his or her insurer shall be reduced by the amount paid or payable to the insured owner or operator or occupants of the insured motor vehicles or their heirs or legal representatives from coverage provided by an uninsured motorist endorsement where the claim of the insured, the owner, or occupants of the insured motor vehicle and the uninsured motorist arise out of the same accident. If the insured or his or her insurer becomes entitled to a reduction, the reduction shall not exceed the amount of the settlement or judgment awarded the uninsured owner or operator."

Additionally, section 17201 provides: "The payment of any settlement with an uninsured owner or operator or the payment of any final judgment for damages obtained by an uninsured owner or operator in a civil action against an insured owner or operator shall not be made until the claims of the owner, the operator, or the occupants of the insured motor vehicle, if any, or their heirs or legal representatives for benefits under the uninsured motorist endorsement are settled by the insurer and the claimants under the uninsured motorist endorsement or are determined by the arbitrator in arbitration proceedings conducted pursuant to Section 11580.2 of the Insurance Code."

The provisions are silent regarding notice to or participation by the uninsured motorist in the determination of "the amount paid or payable . . . from coverage provided by an uninsured motorist endorsement," but effectively renders the injured uninsured motorist powerless by staying payment of the settlement or judgment until the insurer and the claimants under the uninsured motorist endorsement either settle or arbitrate the claims among themselves.

These provisions grew out of a number of bills proposed as a compromise between a "no-fault" system and strong mandatory insurance laws, with high administrative costs. (Sen. Republican Caucus Rep. on Sen. Bill No. 808, Sept. 12, 1983, p. 3.)

"The main purposes of SB 808 are to reduce the cost of buying coverage against uninsured drivers, and to address the lack of enforcement by state

agencies against uninsured motorists. It is inequitable for 80% of the motoring public to purchase auto insurance and pay higher premiums because 20% of motorists are uninsured." (Finance & Ins. Com., Sen. Bill No. 808–Mello, as amended May 27, 1983, p. 3.) According to the author of Senate Bill No. 808, Henry J. Mello, "This bill is a compromise measure which attempts to respond to the financial harm and irritation of insureds, who must deal with the result of damages caused by uninsured motorists. Although SB 808 will not resolve all the societal problems associated with the uninsured motorist, it makes great strides for relief of those conscientious Californians who do carry insurance, and puts real teeth in California's mandatory insurance law." (Letter to Governor George Deukmejian, dated Sept. 15, 1983, after passage by both houses.) However, some opponents questioned whether the courts would uphold the provision to automatically reduce a judgment. (Letter from Omni on behalf of State Farm to Assemblyman Robinson on related Assem. Bill No. 117, dated Apr. 8, 1983, p. 2.)

The only reported case dealing with this section, *Gutierrez* v. *De Lara* (1987) 188 Cal.App.3d 1575 [234 Cal.Rptr. 158], held that section 17200 did not apply retroactively but only to judgments or settlements arising from accidents occurring after the statute's effective date, January 1, 1984, because it changed the legal effect of a past event. (*Id.,* at p. 1579.) There, the uninsured plaintiffs obtained a jury verdict against the insured defendants in 1985 based on an automobile collision which occurred in 1982. At a posttrial hearing, the trial court granted defendants a setoff for the sum of money paid in uninsured motorist benefits, reducing the judgment to zero. In reversing, the court explained, "At the time of the accident, appellant's status as an uninsured motorist was inconsequential insofar as her right to recover compensation for her injuries caused by the fault of another party. However, *the application of section 17200 abrogated appellant's right to collect her judgment due to this status.* Further, this statute provides a novel penalty for being uninsured and thus is not a clarification of existing law." (*Ibid.,* italics added.)

4. Denial of Procedural Due Process

■ Both the Fourteenth Amendment to the federal Constitution and article I, sections 7 and 15 of the California Constitution protect the individual from deprivations of "life, liberty, or property without due process of law."

The uninsured motorist's interest in the right to compensation for injuries caused by another, as evidenced by a judgment or settlement, falls within the protection afforded by constitutional procedural due process guarantees. As the California Supreme Court declared: "We have repeatedly recognized that statutes providing a procedure according to which one litigant can be

forced to relinquish an interest in his property for the benefit of another effectuate a 'taking' of property, entitling the former to prior procedural safeguards. Accordingly we have held accountable to the principles of procedural due process California statutes dealing with wage garnishment (*McCallop* v. *Carberry* (1970) 1 Cal.3d 903 [ ]), claim and delivery (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258 [ ]), prejudgment attachment (*Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [ ]), and small claims appeals (*Brooks* v. *Small Claims Court* [1973] 8 Cal.3d 661 [105 Cal.Rptr. 785, 504 P.2d 1249])." (*Beaudreau* v. *Superior Court* (1975) 14 Cal.3d 448, 457 [121 Cal.Rptr. 585, 535 P.2d 713]; see also, *Schultz* v. *Regents of the University of California* (1984) 160 Cal.App.3d 768, 775 [206 Cal.Rptr. 910].)

■ It is fundamental that due process requires notice (*Lambert* v. *California* (1958) 355 U.S. 225, 231 [2 L.Ed.2d 228, 233, 78 S.Ct. 240]) and opportunity for hearing (*Parratt* v. *Taylor* (1981) 451 U.S. 527, 540 [68 L.Ed.2d 420, 431-432, 101 S.Ct. 1908]) before an impartial tribunal (*Marshall* v. *Jerrico, Inc.* (1980) 446 U.S. 238, 242 [64 L.Ed.2d 182, 188, 100 S.Ct. 1610]).[7] As admitted by counsel for Bodily at oral argument, none of the essential elements of procedural due process were present here.

In the typical lawsuit arising out of an automobile accident where both the plaintiff and defendant have been injured and both parties claim the other party was at fault, at least partially, the parties cross-complain and raise defenses of comparative negligence. (See *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 822 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].) In the absence of section 17200, in the uninsured motorist's suit against the insured, the insured, or the insurer subrogated to his rights, would assert the affirmative defense of comparative negligence and file a compulsory cross-complaint in order to assert these rights. Failure to do so would bar any claim against the uninsured arising out of the same incident. (Code Civ. Proc., § 426.30, subd. (a).)[8]

---

[7] "The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process. [Citation.] The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. [Citation.] At the same time, it preserves both the appearance and reality of fairness, 'generating the feeling, so important to a popular government, that justice has been done,' *Joint Anti-Fascist Committee* v. *McGrath,* 341 U.S. 123, 172 [ ](1951) (Frankfurter, J., concurring), by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him." (*Marshall* v. *Jerrico, Inc., supra,* 446 U.S. at p. 242 [64 L.Ed.2d at p. 188].)

[8] Code of Civil Procedure section 426.30, subdivision (a) provides "Except as otherwise provided by statute, if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his an-

The reduction required by section 17200 appears to be automatic and can be obtained by the insured, or the insurer subrogated to his rights, without asserting a defense, such as comparative negligence, against the uninsured motorist or filing a cross-complaint for the insured's injuries arising out of the same accident in the uninsured's action against the insured.

Furthermore, section 17200 fails to provide any procedure to protect the injured uninsured motorist's interest in his settlement or judgment. By definition, uninsured motorist coverage is limited to the amount the insured or his representatives are "entitled to recover as damages . . . from the owner or operator of an uninsured motor vehicle . . . ." (Ins. Code, § 11580.2, subd. (a)(2).) The Insurance Code also provides that any arbitration award between the insured and his insurer is not conclusive in any action or proceeding between the insured and the uninsured motorist (Ins. Code, § 11580.2, subds. (a) and (f).) Yet, the dictates of section 17200 reduce the uninsured's recovery without his or her participation in the determination of the amount due. The potential for bias and collusion is obvious. In cases where the same insurer provides the insured with both uninsured motorist coverage and liability coverage, the incentive to favor its own insured exists. Even if we assume that the insured and his insurer act in utmost good faith, the injured uninsured motorist is denied his constitutional rights. Without notice and opportunity to present evidence on the issues of the uninsured's liability, the insured's comparative negligence, and the amount of the insured's damages, before an impartial tribunal, there is an absolute denial of due process. (*Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]; *Bell* v. *Burson* (1971) 402 U.S. 535 [29 L.Ed.2d 90, 91 S.Ct. 1586]; *Rios* v. *Cozens, supra,* 7 Cal.3d 792, 795.)

Furthermore, the automatic reduction disrupts other procedures, as it literally would apply to each and every "judgment" or "settlement," whether such had taken into account the uninsured's liability for damages to the insured by setoff or otherwise. Section 17200 destroys the res judicata or collateral estoppel effect of a final judgment resulting from the uninsured's action against the insured, which ordinarily would preclude the insured and insurer from belatedly raising issues of the uninsured's liability.[9] Additionally, it grants the insured the full benefit of his claim based upon the

---

swer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded." The statute does not apply where the cause of action not pleaded is already the subject of a pending action. (Code Civ. Proc., § 426.40, subd. (c).)

[9] Here, for example, Bennett obtained an arbitration award of $13,500. The record contains only the award, which generally is conclusive on matters of fact and law. (*Lindholm* v. *Galvin* (1979) 95 Cal.App.3d 443, 450-451 [157 Cal.Rptr. 167].) Bennett contends that the arbitrator found Bodily 100 percent negligent.

uninsured's alleged liability without the uninsured's presentation of a defense of comparative negligence.[10]

## CONCLUSION

We do not quarrel with the state's imposition of penalties upon uninsured motorists to encourage financial responsibility and to further the laudable goal of public protection.

However, this fatally flawed statute cannot reach those remedial or deterrent objectives by allowing an unbridled private power to assault the uninsured motorist's protected property rights in direct violation of the due process clause of the Fourteenth Amendment of the United States Constitution and article I, section 7 of the California Constitution.

## DISPOSITION

Judgment reversed and the matter remanded to the superior court for further proceedings consistent with this opinion. Appellant is awarded costs on appeal.

Danielson, Acting P. J., and Croskey, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 17, 1989.

---

[10] As one commentator said, "What has happened to comparative negligence in percentages? This code section has no provision whatsoever to allow for such percentages to be applied but calls for a 100% credit. This reminds one of the old 'contributory negligence' law prior to *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [ ] in which a jury found that both plaintiff and defendant were each injured in an accident and that both of them were at fault. ¶ Is it not easy for an uninsured motorist carrier (who also is the liability carrier) to settle with their insured for an amount which is the approximate value of the claim of the uninsured motorist and thereby defeating [sic] any loss under its liability coverage, regardless of how negligent their own insured was in the happening of the accident? Do the Vehicle Code sections not create windfalls for insurance companies by reducing or eliminating their liability merely because their own insured also happened to have suffered injury?" (1 Paul A. Eisler, Cal. Uninsured Motorist Law (4th ed., 1988) § 17.80, p. 17-28.)