[Civ. No. 16660.   First Dist., Div. One.   Mar. 27, 1956.]

MARY L. BOARDMAN et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Bergen Van Brunt and Allan L. Sapiro for Petitioners.

Everett A. Corten and Daniel C. Murphy for Respondents.

BRAY, J.—This petition for a writ of review to review an award finding that the death of decedent[1] was not caused by an injury sustained during his employment, raises the question of the effect of whether the discussion by the independent medical examiner appointed by the commission pursuant to California Administrative Code, title 8, section 10820, of the medical facts with one of the medical experts for the employer and its insurance carrier, is a violation of section 10823, Administrative Code.[2]

## RECORD

Decedent, a man in his early forties, died at Fort Miley Veterans Hospital August 2, 1952. "Embolus in right ventricle" due to "Ideopathic thrombosis of hypogastric veins, bilateral" was diagnosed as the immediate cause of death. Petitioner filed in the commission an application for adjustment of claim, alleging that on December 28, 1951, decedent had sustained an industrial injury when he was struck by an unmounted heavy bus tire which caused him injuries resulting in his death. At the hearing of this application the medical evidence concerning the probability of the injury being the cause of death was sharply in conflict. The doctor who treated him at the Veterans Hospital where he was admitted July 15, 1952, and the surgeon who performed the autopsy, opined that his death was in part attributable to the injury. Two medical experts called by the respondents (one of whom was Dr. Moon), basing their opinions on certain evidence, opined that the injury in nowise contributed to his death. At one of the hearings the referee suggested the appointment of an independent medical examiner at the respondents' expense to make an independent investigation of the medical problems vexing the referee and to render an opinion as to whether the injury contributed to the death. The parties stipulating to such appointment, Dr. Carr, a pathologist, was appointed. Thereafter Dr. Carr rendered his report in which he was of the opinion that the injury in nowise contributed to the death. The referee then reported that there was no causal connection

---

[1] Petitioners are Mary L. Boardman, wife of decedent, and Joy Ann Boardman, daughter of decedent, by her guardian ad litem.

[2] There are a number of other questions presented, but as our decision of this question is determinative of this petition we deem it unnecessary to discuss the other questions.

between the injury and the death. Petitioners formally objected to, and moved to strike, the report of Dr. Carr, as not being "independent." Thereafter the commission filed its findings and conclusions denying the claim. A petition for reconsideration was granted and opinions of a urologist and a vascular surgeon were obtained. These supported the theory that the injury did not contribute to the death, although petitioners contend that both experts admitted there could have been a causal connection. Thereafter, the commission ordered that the previous findings, conclusions and orders be adopted as the decision on reconsideration.

### INDEPENDENT MEDICAL EXAMINER

The report of the referee on decision after reconsideration shows that the report of Dr. Carr was considered by him in his recommendation to the commission that the original findings, conclusions and orders of the first referee and of the commission were correct and should again be adopted.

Section 10820, Administrative Code, provides: "The commission may refer disputed medical questions in connection with compensation proceedings to . . . an independent medical examiner appointed by the commission . . . or . . . referee. Said reference may be for . . . an investigation of the medical question involved without examination of the injured employee." Section 10823 provides: "All correspondence concerning the examination and report of the independent medical examiner or amendments thereto shall be made through the commission, a panel, a commissioner or general referee, *and the parties and attorneys or representatives shall not communicate with the independent medical examiner in any manner* except for the necessary interview by the examiner incidental to such examination." (Emphasis added.)

Dr. Jesse Carr, the physician appointed by the referee, filed his report. In it he stated: ". . . I read the entire file carefully and have since talked to several people about this whole story, *including Dr. Moon*. . . . [T]he problem here is not one of fact but one of reconciling the medical testimony of two well known and well connected pathologists." (Emphasis added.) He then reviewed "the personalities and characteristics of the two men inasmuch as this issue is largely a philosophical one. . . ." He then pointed out that Dr. Moon had stated that there was no causal connection between the traumatic injury and the death while Dr. Frerichs had stated that the injury was the prime mover in the disease process which

resulted in death; that while both doctors agreed "on the specific mechanism of death" they disagreed on whether the injury was "either proximately or indirectly associated with the disease conditions which caused the demise." The difference in the two men "is the result of their thinking, but their thinking is the result of their experience and philosophy." He then stated that Dr. Moon had reached his conclusion from the facts while Dr. Frerichs "has been acting for an applicant, perhaps stimulated by the applicant's attorney, to conjure up theoretical possibilities and then, perhaps unwittingly, he has striven to substantiate these somewhat vacuous ideas." He then stated that the latter had a "lack of experience in the medical legal field" and that in his "honest zeal to help an applicant" Dr. Frerichs had attempted to "twist the existing facts into a hinterland of circumstance. . . ." He is convinced that Dr. Frerichs "would have liked not to have been the witness that he was and that he will never be again." Dr. Carr stated that Dr. Moon was originally trained by him in pathology, "a long time associate in the medical school and a person well known for his integrity and basic honesty. . . ." Dr. Carr gave his opinion that "the time intervals, the circumstances of injury, the autopsy findings, the miscellaneous intercurrent circumstances, and the death itself are all wrong, each to itself and each to another to allow an association of the initial injury of six months prior to death with the death itself as described in this file."

Dr. Moon was a witness on behalf of the employer and its insurance carrier. He testified prior to the appointment of Dr. Carr as independent medical examiner. It was the conflict between the theory of Dr. Moon, a witness for the respondents, and that of Dr. Frerichs, a witness for the petitioners, which caused the referee to state that his problem was to determine which of the theories advanced was the more probable medically and caused him to ask for consent to the appointment of an independent medical examiner.[3]

---

[3] In petitioners' objection to and motion to strike the report of the independent medical examiner petitioners stated that Dr. Carr and Dr. Moon were then partners in what is designated on the door of their office as "Dr. Jesse L. Carr and Dr. Henry Moon 'Medical Laboratory.'" While the statements in Dr. Carr's report show a close association between the two doctors, there is nothing in the evidence to support the claim that they are partners. The association shown would not constitute a legal disqualification of Dr. Carr to act as an independent medical examiner. If he were a partner it would seem that it would be improper to appoint him to be the determinative factor in a conflict between his partner's theory and that of a third party.

Sections 10820 and 10823, *supra,* were adopted pursuant to the provisions of Labor Code, section 5307. Section 9700, Administrative Code, title 8, provides that the rules of which said sections are a part shall govern practice and procedure in any proceeding before the Industrial Accident Commission.

It is obvious from a study of it, that section 10823 was enacted to make sure that the independent medical examiner would be not only independent, but would be completely objective in his approach to, and in his investigation of the medical question involved. To insure this, the section prohibited him from considering data which did not come to him through the commission or commissioners or referees, and particularly prohibited ''the parties and attorneys or representatives'' from communicating with him *in any manner.* Dr. Carr, in talking to Dr. Moon, the respondents' medical expert, no matter how innocently, violated, if not the letter, the very spirit of this section. Even if, as claimed by respondents, the weight of evidence without Dr. Carr's report was on respondents' side, the violation of section 10823 required that the commission entirely disregard Dr. Carr's report.[4]

It may very well be that Dr. Carr would have come to the same conclusion as to the cause of death he did, even if he had not talked to Dr. Moon. However, the fact is that he did and appeared to place some importance upon this fact. Moreover, it is most important that a rule such as that specified in section 10823 be observed and that the report of the independent medical examiner be never subject to the possibility that it is based upon matters imparted to him by one so closely connected with a party as to leave it questionable as to whether the information imparted is objective and not partisan.

The rule expressed in the section is a salutary one, and one which should be enforced strictly. A report based, even in small part, on its violation, is so tainted as to destroy its value. The commission erred in not granting the motion to strike it from the records and in basing its decision, even in part, upon it.

The award is annulled and the proceeding remanded to the commission for further proceedings, with instructions to strike the Carr report from the record.

Peters, P. J., and Wood (Fred B.), J., concurred.

[4] We are satisfied that Dr. Carr's violation of the section was unintentional and because of lack of knowledge of the section itself.