[Civ. No. 49605. Second Dist., Div. Five. Sept. 30, 1977.]

LLOYD S. DAVIS, a Judge of the Superior Court, Plaintiff and Appellant, v. COMMISSION ON JUDICIAL QUALIFICATIONS, Defendant and Respondent.

**COUNSEL**

Lloyd S. Davis, in pro. per., for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Iver E. Skjeie, Assistant Attorney General, and Henry G. Ullerich, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**HASTINGS, J.**—Lloyd S. Davis, appellant, sought a determination by the Commission on Judicial Qualifications (the Commission) that he was no longer incapacitated to serve as a judge. He was unsuccessful and this is an appeal from a judgment of the superior court denying a petition for a writ of mandate by which appellant sought a review of the actions of the Commission.

Appellant was appointed to the office of the judge of the Superior Court for the County of Los Angeles on November 14, 1967. In 1968, he was elected to a six-year term commencing January 6, 1969. On July 21, 1970, in accordance with the provisions of section 75060, *infra*, of the Government Code, appellant, upon his request, was granted a retirement for disability.

On January 24, 1972, appellant advised the Commission that in his opinion he had completely recovered from his disability and requested that the Commission exercise its discretion under section 75060.6, *infra*, to require him to undergo a medical examination for the purpose of determining whether he was still incapacitated physically or mentally for service as a judge.

The Commission, in summary fashion, reviewed appellant's status and medical reports and advised him that his petition was denied. Appellant

then filed a petition for writ of mandate and for declaratory relief in the superior court and on December 4, 1974, judgment was entered, determining that the Commission had not proceeded in the manner required by law and the matter was remanded for further proceedings.

On February 7, 1975, the Commission vacated its prior decision denying the petition of appellant, and on June 27, 1975, it held a hearing on the application. After the hearing, the Commission denied appellant's application and adopted findings of fact and conclusions of law. The Commission denied appellant's request for reconsideration.

On April 2, 1976, appellant filed a petition for writ of mandate in the superior court, primarily on the grounds that there was no competent evidence to support the Commission's decision. The Commission responded with points and authorities. The matter was heard on June 1, 1976, and judgment was entered on June 21, 1976, denying the petition for a peremptory writ of mandamus. This appeal followed.

█ The trial court, in denying the writ of mandate, first made a finding that there was substantial evidence to support the conclusion of the Commission that appellant remained incapacitated to act as a judge.[1] It also added another finding which states: "As an alternative holding and finding, this court finds decisions of the Commission on the question of whether judge retired for disability has recovered from that disability are committed by law to the discretion of the Commission on Judicial Qualifications and are not reviewable by the Superior Court in a mandamus proceeding."

Basically, the law supports this latter finding. Two sections of the Government Code determine the issue. The first is Government Code section 75060, which in pertinent part states: "(a) Any judge who is unable to discharge efficiently the duties of his office by reason of mental or physical disability that is or is likely to become permanent may, with his consent and with the approval of the Chief Justice or Acting Chief Justice and the Commission on Judicial Qualifications, be retired from office . . . ."

This section provides a procedure whereby a judge who is physically or mentally disabled can voluntarily request retirement. (*Gorman* v.

---

[1] From our review of the record, we agree there was substantial evidence to support this finding. Since we have chosen, however, to base our affirmance on more fundamental grounds, we need not discuss the sufficiency of the evidence.

█

*Cranston,* 64 Cal.2d 441 [50 Cal.Rptr. 533, 413 P.2d 133].) Appellant availed himself of its provisions, thereby obtaining his disability retirement status.[2]

The other section (75060.6) establishes the judge's disability retirement pay and sets forth a procedure for review and reinstatement as a judicial officer of the state in the event he recovers from his disability. The section provides in pertinent part:

"[E]very judge who retires pursuant to Section 75060 shall during the remainder of his life, receive an allowance equal to one-half of the salary payable, at the time the allowance falls due, to the judge holding the judicial office to which he was last elected by the people. The allowance shall be paid by the State at the times and in the manner provided for the payment of salaries of justices of the Supreme Court.

"The Commission on Judicial Qualifications, *in its discretion,* and from time to time, *may* require any judge who is receiving an allowance under this section and who is under the age of 65 years to undergo medical examination. Such examination shall be made by one or, more physicians or surgeons, appointed by the Commission on Judicial Qualifications, at the place of residence of the judge or other place mutually agreed upon. Upon the basis of such examination the commission shall determine whether he is still incapacitated, physically or mentally, for service as a judge. If the commission determines, on the basis of the results of such medical examination, that he is not so incapacitated, he shall be a judicial officer of the State, but shall not exercise any of the powers of a justice or judge except while under assignment to a court by the Chairman of the Judicial Council. The allowance of such judge shall cease if he refuses an assignment while he is not so incapacitated. . . ." (Italics added.)

The emphasized words in the key sentence of the second paragraph are dispositive: "The Commission . . . *in its discretion,* and from time to time, *may* require any judge who is receiving an allowance under this section . . . to undergo medical examination." Any possibility of reinstatement as a judicial officer of the state, eligible for assignment to a

---

[2]Article VI, section 18, subdivision (c) of the California Constitution sets forth the procedure for retiring a disabled judge involuntarily. This opinion deals only with facts surrounding a voluntary retirement and does not purport to analyze or answer a disabled judge's options after his recovery from the disability that caused the involuntary retirement.

court by the Chairperson of the Judicial Council, is limited by the language of the section and in our view gives the voluntarily retired judge no legal right to force the Commission to consider his eligibility for reinstatement.[3] Nothing in the language even faintly suggests that the retired judge has any right to insist that the Commission take any action.[4]

The purpose of the section is twofold; it (1) provides a procedure for recalling a totally recovered judge to a "stand-by status" for assignments by the Chairperson of Judicial Council, and (2) it enables the Commission to prevent such a judge in this situation from continuing to draw a substantial income for not working when he or she is again capable of working and is needed. Provisions of a similar sort in pension schemes are not uncommon. Section 21028 of the Government Code contains a parallel provision for state employees who have retired for disability. The vital point is that there the Legislature has expressly provided that the retired employee may demand a medical examination which may lead to his reinstatement.[5] The omission of an analogous right in section 75060.6 was clearly not inadvertent.

It is, however, appellant's contention that constitutional due process grants him the right to demand a hearing, and the right to a judicial review of any determination by the Commission. He claims that, on election or appointment to office, a judge becomes vested with the benefits provided by the Judge's Retirement Act (*Dickey* v. *Retirement Board,* 16 Cal.3d 745, 748 [129 Cal.Rptr. 289, 548 P.2d 689]), and these benefits include the "reasonable expectation" that the judge will be

[3]The fact that the Commission has absolute discretion to initiate formal proceedings by asking the retired judge to undergo a medical examination, does not mean that it has no obligation to consider the situation of such judges, if it is brought to its attention that they may no longer be disabled. The obvious purpose of the statute is to create a pool of experienced judges on whom the Chairperson of the Judicial Council may draw at minimal expense to the taxpayers. We merely hold that no individual judge has a right to judicial review of the Commission's discretion.

[4]Section 75060.6 does not even contain any guidelines for the exercise of the Commission's discretion. It would have been easy enough to insert a phrase such as "If the Commission has reason to believe that the judge is no longer incapacitated for service as a judge . . . ."

[5]Section 21028 reads in relevant part as follows: "The board, or in case of a local safety member the governing body of the employer from whose employment the person was retired, *may* require any recipient of a disability retirement allowance under the minimum age for voluntary retirement for service applicable to members of his class to undergo medical examination, *and upon his application for reinstatement, shall* cause a medical examination to be made of any such recipient who is at least six months less than the age of compulsory retirement for service applicable to members of the class or category in which it is proposed to employ him." (Italics added.)

certified by the Commission for service as a judge if he is no longer incapacitated. Accordingly, this "reasonable expectation" is a valuable property right entitled to the protection of due process of law as enumerated above. Although there is no decisional law that we can find directly in point under the facts of this case, there is abundant law dealing with the overall legal concept involved that rejects this argument.

The United States Supreme Court and our Supreme Court have held that before a person can demand a due process hearing where he has been discharged from his employment it must be shown that he had a "property" or "liberty" interest in the employment. (*Tennessee* v. *Dunlap,* 426 U.S. 312 [48 L.Ed.2d 660, 96 S.Ct. 2099]; *Bishop* v. *Wood,* 426 U.S. 341 [48 L.Ed.2d 684; 96 S.Ct. 2074].) In *Bishop,* a police officer's employment was terminated at the discretion of his superior without a pretermination hearing. The Supreme Court held he was not denied due process of law under the Fourteenth Amendment, and that his action could only be for breach of contract. One of the contentions of the former police officer was that he was classified as a "permanent employee" under a city ordinance and this gave him *sufficient expectancy of continued employment* which constituted a protected property interest. The court disagreed with him on this point, stating that property interests are not created by the Constitution, but must be created by ordinance or by an implied contract and claim of entitlement must be decided by reference to state law. (Citing *Board of Regents* v. *Roth,* 408 U.S. 564 [33 L.Ed.2d 548, 92 S.Ct. 2701].) In the recent case of *Barthuli* v. *Board of Trustees,* 19 Cal.3d 717 [139 Cal.Rptr. 627, 566 P.2d 261], a school associate superintendent sought to compel the school district to reinstate him in that capacity after it had voted, without a hearing, to rescind his contract. One of the petitioner's arguments was that he possessed a legitimate expectation of entitlement to continued employment as an administrator, and he therefore was denied his procedural due process rights. Our Supreme Court disagreed, stating on pages 722-723:

"Quoting at page 206 from *Board of Regents* v. *Roth,* [*supra*], (1972) 408 U.S. 564, 576-577 [33 L.Ed.2d 548, 560-561, 92 S.Ct. 2701], we pointed out that property interests may take many forms: ' "To have a property interest in a benefit, a person clearly *must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.* It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a

hearing to provide an opportunity for a person to vindicate those claims. [¶] Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." ' (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at p. 207 [124 Cal.Rptr. 14, 539 P.2d 774].)

"Petitioner, in his position as an administrator, is not a permanent employee. (*Council of Directors and Supervisors* v. *Los Angeles Unified Sch. Dist., supra,* 35 Cal.App.3d 147, 152 [110 Cal.Rptr. 624].) *The Legislature has not given him a property right* in the administrative position. Rather, the Legislature has made clear by sections 13314 (§§ 44893, 87454) and 13315 (§§ 44897, 87458) that petitioner's tenure rights and thus his property rights are those of a classroom teacher and not those of an administrator. Respondent has not denied or repudiated petitioner's classroom teacher property interests, and the procedural rights recognized in *Skelly* are inapplicable." (Italics added.)

■ The Legislature has not created the property right appellant desires.[6] To the contrary, the language of section 75060.6 fully advises a disabled judge considering voluntary retirement of his future rights, and at most spells out merely an "expectancy" that he may again be a judicial officer but able to act only when under assignment by the Chairperson of the Judicial Council. Procedural due process protects only those interests that a person has already acquired in specific benefits. (*Board of Regents* v. *Roth, supra,* 408 U.S. 564.) Appellant's only property right under the legislative plan for voluntary retirement for disabled judges is that his retirement benefits will continue and will not be taken from him without due process of the law. This, of course, has not been done, nor is it even threatened.

The superior court erred when it issued its writ of mandate in December 1974. The Commission proceedings which followed were held under the wrongful compulsion of that writ. The court's later denial of a

---

[6]Once the Commission initiates reinstatement proceedings by requiring the retired judge to undergo a medical examination, it commits itself to reinstate the retired judge as a judicial officer of the state, subject to assignment, if the examination reveals that he is no longer "incapacitated, physically or mentally, for service as a judge." Section 75060.6 is quite explicit: if the retired judge passes his medical examination, and there is no contrary evidence before the Commission, the only possible fact finding is that the judge is no longer incapacitated. Once the Commission so determines, the statute itself takes over and the retired judge "shall be a judicial officer of the State, . . ."

writ is upheld on the sole basis that the Legislature committed the decision whether to initiate proceedings leading to reinstatement to the total, nonreviewable discretion of the Commission.

Appellant has cited numerous cases to support his theory that he is entitled to review of the Commission's action.[7] They are not germane to the issue here. Most of the cases involve valuable property rights that *are* entitled to due process protection or are so factually different that they are totally inapplicable.

For the reasons stated, the trial court correctly found that it lacked jurisdiction to review the Commission's findings. Other contentions raised by appellant are therefore inapplicable.

The judgment denying the writ of mandamus is affirmed.

Kaus, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied October 13, 1977, and appellant's petition for a hearing by the Supreme Court was denied December 6, 1977. Manuel, J., did not participate therein. Sullivan, J.,* participated therein. Bird, C. J., Tobriner, J., and Newman were of the opinion that the petition should be granted.

---

[7]The key cases relied upon are: *Strumsky* v. *San Diego County Employees Retirement Assn.,* 11 Cal.3d 28, 45-46 [112 Cal.Rptr. 805, 520 P.2d 29]; *Geiler* v. *Commission on Judicial Qualifications,* 10 Cal.3d 270, 276 [110 Cal.Rptr. 210, 515 P.2d 1]; *Bixby* v. *Pierno,* 4 Cal.3d 130, 144 [93 Cal.Rptr. 234, 481 P.2d 242]; and *Boardman* v. *Industrial Acc. Com.,* 140 Cal.App.2d 273, 277 [295 P.2d 465].

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.