[No. B110759. Second Dist., Div. Seven. Oct. 27, 1997.]

DAVID YOSHIOKA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
GLENN ALAN TODD et al., Real Parties in Interest.

976

**COUNSEL**

Holstein, Taylor & Unitt and Brian C. Unitt for Petitioner.

Remcho, Johansen & Purcell, Robin B. Johansen, Joseph Remcho, Kathleen J. Purcell and Gina M. Calabrese as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Ford, Walker, Haggerty & Behar, Maxine J. Lebowitz, Murchison & Cumming and Richard D. Newman for Real Parties in Interest.

Daniel E. Lungren, Attorney General, Linda A. Cabatic, Leslie R. Lopez, Shelleyanne W. L. Chang, Deputy Attorneys General, Horvitz & Levy, Christina J. Imre and Jon B. Eisenberg as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

**WOODS, J.**—Petitioner David Yoshioka wishes to collect noneconomic damages from real parties in interest Glenn Alan Todd and Judith Todd. He challenges Proposition 213 (passed by voters last November and which prohibits uninsured drivers from collecting such damages) as unconstitutional on due process and equal protection grounds. Amici curiae in support of petitioner further challenge under California's single-subject rule. We find that the initiative withstands constitutional muster on all three grounds and therefore must deny his petition for a writ of mandate.

### FACTUAL AND PROCEDURAL SYNOPSIS

On July 26, 1994, petitioner David Yoshioka and real parties in interest Glenn Alan and Judith Todd were involved in an automobile accident. Petitioner had no auto insurance at the time of the accident. Petitioner filed his complaint in the Superior Court for the County of Los Angeles on June, 14, 1995, alleging that he was rear-ended by real parties and subsequently sustained serious injuries.

On November 5, 1996, Proposition 213 was passed by 76.83 percent of the voters of the State of California, creating California Civil Code section 3333.4. This initiative prohibits uninsured motorists and drunk drivers from collecting noneconomic damages in any action arising out of the operation or use of a motor vehicle. Further, it prohibits recovery of any damages by felons for injuries caused in the commission of or flight from a felony. (Civ. Code, § 3333.3.) The voter's pamphlet reveals numerous interests the electorate considered in enacting this initiative. Essentially such interests can be narrowed down to two broad concerns the voters took into account: (1) the interest in restoring balance to our justice system and (2) the interest in reducing costs of mandatory automobile insurance.

On November 8, 1996, the subject litigation proceeded to arbitration, where an award was made. Both parties filed a request for trial de novo. The matter was set for trial on March 17, 1997. Based on Proposition 213, real party brought a motion *in limine* to exclude all evidence of general damages and bar all jury instructions on that issue. Judge Piatt granted the motion *in limine* because he refused to rule that Proposition 213 was unconstitutional in its retroactive application and looked for appellate review on that issue. Further, he granted the real parties' request to amend their answer to add Proposition 213 as an affirmative defense. The trial was continued until May 27, 1997, to afford petitioner the opportunity to file his writ petition.

Petitioner filed a petition for writ of mandate on April 2, 1997. Subsequently, on May 5, 1997, real parties filed an opposition to the writ.

Petitioner replied on May 16, 1997. Amici curiae in support of the petitioner filed a brief on May 14, 1997. Real parties answered on May 27, 1997. Amici curiae in support of real parties (the Attorney General and the Association of California Insurance Companies) filed briefs on June 12, 1997. The constitutionality of this initiative is now before this court for review.

## DISCUSSION

■ Petitioner contends that both the retroactive and prospective applications of Proposition 213 are unconstitutional because the initiative violates his rights of (1) due process and (2) equal protection under the federal and state Constitutions. Further, amici curiae in support of petitioner contend this initiative is invalid because it violates California's single-subject rule. Accordingly, petitioner wishes to collect both economic and noneconomic damages for injuries suffered from real parties in interest. We disagree with petitioner's contentions that this state initiative is unconstitutional in either its retroactive or prospective form and application.

### I. *Retroactive Application of Proposition 213*

■ Courts addressing retroactive application of initiatives generally follow a two-step analysis. (*Gutierrez* v. *De Lara* (1987) 188 Cal.App.3d 1575, 1578 [234 Cal.Rptr. 158].) First, the court must determine whether the initiative has been retroactively applied. If so, the court must then decide if the people intended that the statute be so applied. Upon a finding of intent, the initiative may be enacted unless it is prohibited by state or federal constitutional provisions. (*Ibid.*) Therefore, we first look at the retroactive application itself and then determine if its application is constitutional.

■ Proposition 213 provides: "This act shall be effective immediately upon its adoption by the voters. Its provisions shall apply *to all actions in which the initial trial has not commenced prior to January 1, 1997.*" (Italics added.)

This initiative was applied to petitioner by the concept of secondary retroactivity. ■ Secondary retroactivity is best defined by our Supreme Court as "[retroactivity which] 'affect[s] the *future* legal consequences of past transactions.'" (*20th Century Ins. Co.* v. *Garamendi* (1994) 8 Cal.4th 216, 281 [32 Cal.Rptr.2d 807, 878 P.2d 566].) The court noted that this type of retroactivity "does not itself offend any laws, including the United States

and California Constitutions."[1] (*Id.* at p. 282.) █ Petitioner's case involves an accident occurring prior to Proposition 213's passage, yet encompasses a trial set following its effective date. He filed a complaint with the court against real parties for an accident which occurred on July 26, 1994. Proposition 213, passed in November of 1996, has prevented him from seeking noneconomic relief because this matter was set for trial on March 17, 1997. It is clear that the initiative applies to petitioner in a retroactive manner.

█ Since the initiative does not expressly state that it will apply retroactively, we must determine the electorate's intent. (*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1212 [246 Cal.Rptr. 629, 753 P.2d 585]; *Russell* v. *Superior Court* (1986) 185 Cal.App.3d 810, 814 [230 Cal.Rptr. 102].) In order to determine such intent it is best to look at the language of the initiative itself. (See *Feckenscher* v. *Gamble* (1938) 12 Cal.2d 482, 500 [85 P.2d 885]; where our Supreme Court held that the measure of damages which applied at the time of the accrual of the cause of action was inapplicable due to the legislative amendment of Civil Code section governing that measure of damages.)

Generally, "[t]he presumption is very strong that a statute was not meant to act retrospectively, [wherein] [i]t ought not receive such a construction unless the words used are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied." (*U.S. Fidelity Co.* v. *Struthers Wells Co.* (1908) 209 U.S. 306, 314 [28 S.Ct. 537, 539, 52 L.Ed. 804].)

█ Petitioner argues that the words, "provisions shall apply *to all actions in which the initial trial has not commenced prior to January 1, 1997*" are susceptible to an alternate interpretation that the voters wanted to give uninsured motorists sufficient time to bring their case to trial if the case was already pending. Therefore, the electorate did not express a clear intent to apply the statute retroactively. He contends that the informed voters who understand the court system is incredibly backed up, would not adopt an exception to the retroactive application for only those cases which, out of mere luck or coincidence, happen to already have a trial date before January 1, 1997. Therefore, it would be illogical to conclude that such voters intended to apply the statute retroactively. Further, the uninformed voters, who are unaware of the civil litigation process, may have thought those pending cases could all be set for trial within two months time.

---

[1]Petitioner contends that real parties in interest misuse this phrase because our Supreme Court's use of it was merely dicta. However, whether we classify this type of application as "secondary retroactivity" or simply "retroactivity," our analysis results in the same conclusion. We choose to use the phrase to simplify our analysis.

However, assuming such an alternative interpretation is possible upon examination of this particular phrase, petitioner fails to consider other sections of the initiative that support a clear finding of retroactive intent. Real parties in interest point out that the initiative specifically states, "A YES vote on this measure means: Uninsured drivers or drivers convicted of driving under the influence of alcohol or drugs at the time of an accident could *no longer sue* someone who was at fault for the accident for non-economic losses (such as pain and suffering)."

On its face, the words " no longer" in this context can only be interpreted as the initiative *no longer* allowing the uninsured to *sue* for noneconomic losses. As real parties in interest contend, "no longer sue" does not logically suggest that one and a half or two years from now, when all cases filed before the initiative are finally resolved, uninsured drivers could no longer sue for such relief. Nor does it imply that this initiative should only apply to accidents that occur post the effective date are finally resolved. It merely states that uninsured motorists can no longer *sue* following the effective January 1, 1997, date. No express exception exists indicating the voters intended to only apply the initiative to accidents occurring post the effective date.

Moreover, it is important to note that this section is placed at the forefront of the voter pamphlet, where each proposition is given a brief synopsis. The effective date portion is hidden in small print many pages back in the "text of the proposed law" section. Petitioner points out that "assuming the voters even read the statement [of the effective date], it is highly possible that confusion would result." But, this excerpt informing the voter of what a "yes" vote entails, which is clear in its intent and visible in its location, would be a part of even a casual reading by a voter. Therefore, upon examination of this section of Proposition 213, coupled with those referring to the effective date, it is clear that the electorate intended to adopt this initiative retroactively. Subsequently, we must still determine its constitutionality.

A. *Due Process*

Petitioner contends that the retroactive application of Proposition 213 has violated his constitutional right to due process. We disagree.

Article I, section 7 of the California Constitution and the 14th Amendment of the United States Constitution guarantee the right of due process. Retrospective application of a statute is constitutional as long as it does not deprive a person of a substantive right without due process of law.

(*In re Marriage of Buol* (1985) 39 Cal.3d 751, 756 [218 Cal.Rptr. 31, 705 P.2d 354].) Procedural due process applies only to vested rights. *(Davis v. Superior Court of Los Angeles* (1977) 73 Cal.App.3d 818, 824 [141 Cal.Rptr. 75].) Petitioner concedes that numerous courts have held that the right to recover specific types of damages is not a vested right because such rights are created by state and common law independent from the Constitution. (See *ibid.* See as examples, *Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137, 159 [211 Cal.Rptr. 368, 695 P.2d 665]; *American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233]; *Werner* v. *Southern Cal. etc. Newspapers* (1950) 35 Cal.2d 121, 129 [216 P.2d 825, 13 A.L.R.2d 252]; *Feckenscher* v. *Gamble, supra,* 12 Cal.2d 482, 499-500; *Tulley* v. *Tranor* (1878) 53 Cal. 274, 280.) Therefore, a state and its people may alter such rights. Such alteration is only forbidden when at the very least the party is deprived of *every reasonable method of securing just compensation.* This does not encompass instances where the plaintiff would not recover as much as he would have had the former rule continued. *(Feckenscher* v. *Gamble, supra,* 12 Cal.2d 482, 499.)

The New York Workmens' Compensation Act, which limits an injured worker's right to sue for general negligence damages, was upheld in order to encourage responsibilities between employers and employees. *(New York Central R. R. Co.* v. *White* (1917) 243 U.S. 188, 197-198 [37 S.Ct. 247, 250-251, 61 L.Ed. 667].) Subsequently, despite a lesser recovery available to injured employees, the act was still deemed consistent with due process principles.

■ Analogous to the act in *New York Central,* under Proposition 213, although petitioner may not be able to recover as high a damage, award as he would have prior to the initiative's passage, he still is legally entitled to some form of relief. Proposition 213 deprives petitioner of a certain type of damages (noneconomic, i.e., pain and suffering), but petitioner cannot claim that he is deprived of every reasonable method of securing just compensation. He is still able to obtain complete recovery for his economic damages.

Notably, assuming petitioner was eligible to recover damages for pain and suffering, it is still questionable whether such a monetary award will ever fully compensate an injured plaintiff. Our Supreme Court has stated, ". . . money damages are at best only imperfect compensation" for pain and suffering. *(Fein* v. *Permanente Medical Group, supra,* 38 Cal.3d 137, 159.) Suspicion will often arise as to whether injured plaintiffs are ever fully compensated for noneconomic relief. However, we are certain that the injured will receive complete compensation for those injuries which can be

measured monetarily. Proposition 213 ensures this relief is continually available.

 An alternative analysis in determining if a retroactive initiative violates due process entails a weighing of a variety of factors. (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371].) Real parties in interest contend that *In re Marriage of Bouquet* is distinct from the case at bar. However, assuming such an analysis is proper, Proposition 213 can still be upheld in its retroactive form.

The following factors are considered by the court: "[1] the significance of the state interest served by the law, [2] the importance of the retroactive application of the law to the effectuation of that interest, [3] the extent of reliance upon the former law, [4] the legitimacy of that reliance, [5] the extent of actions taken on the basis of that reliance, and [6] the extent to which the retroactive application of the new law would disrupt those actions."[2] (16 Cal.3d at p. 592.)

### 1. *The significance of the state interest*

 Amici curiae in support of real parties in interest stated the voters' interests best: 1) the interest in restoring balance to our justice system and 2) the interest in reducing costs of mandatory automobile insurance. More specifically however, the interest in restoring balance to our justice system includes such interests in decreasing the number of lawsuits, reducing annual court-related costs to state and local governments, increasing the costs of drunk driving and disobeying California's Financial Responsibility Law, curtailing commission of felonies and avoiding unreasonable damages being awarded to the uninsured. The interest in reducing costs of mandatory automobile insurance addresses the need to reduce skyrocketing insurance premiums by encouraging motorists to buy liability insurance.

---

[2]It is important to note that this analysis, specific to retroactive initiatives, mirrors that of a general substantive due process analysis. For a substantive due process analysis, since Proposition 213 pertains to economics rights, we would apply the rational basis test. (*Lochner* v. *New York* (1905) 198 U.S. 45 [25 S.Ct. 539, 49 L.Ed. 937].) This test entails that we find: (1) the challenged legislation has a legitimate state interest and (2) the initiative is rationally related to that legitimate state interest. (*Hoffman* v. *United States* (9th Cir. 1985) 767 F.2d 1431, 1436-1437; *Fein* v. *Permanente Medical Group, supra*, 38 Cal.3d 137, 157,158.) The burden of demonstrating the constitutional infirmity of a statutory scheme is squarely upon the challenger. (*Anacker* v. *Sillas* (1976) 65 Cal.App.3d 416, 423 [135 Cal.Rptr. 537].) Purposes and their relationship to the statutory scheme of Proposition 213 are to be liberally construed. (*Legislature* v. *Eu* (1991) 54 Cal.3d 492, 500-501 [286 Cal.Rptr. 283, 816 P.2d 1309].) Ultimately if we find under *In re Marriage of Bouquet, supra*, 16 Cal.3d 583, that the initiative is significant, the retroactive application to that interest is important, and action taken on the basis of the former law is near identical to that of the later, we simultaneously meet the rational basis test under the due process clause.

In the wake of an insurance premium crisis, the electorate's interests in controlling the high costs of insurance are significant. (See *American Bank & Trust Co.* v. *Community Hospital, supra,* 36 Cal.3d 359; *Hoffman* v. *United States, supra,* 767 F.2d 1431; *Western Steamship Lines, Inc.* v. *San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100 [32 Cal.Rptr.2d 263, 876 P.2d 1062], where the Medical Injury Compensation Reform Act of 1975 (hereinafter, MICRA) legislation limiting the recovery of economic damages in order to contain the costs of malpractice insurance was upheld.) Similar to the MICRA legislation, Proposition 213's supporters had a legitimate interest in controlling the high cost of automobile insurance.

The interest in restoring balance to our justice system is also significant. Proposition 213 makes it more difficult for citizens to ignore the Financial Responsibility Law, where motorists are required to obtain insurance if they wish to drive. Once in effect, law abiding citizens are not forced to pay for the injuries of those who choose to disobey the law. Therefore, it was proper for the electorate to consider such an interest in enacting a new initiative.[3]

2. *The importance of the retroactive application of the law to the effectuation of that interest*

Further, retroactive application is important in effectuating both these interests. Petitioner points out that "[t]he retrospective aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former." (*Usery* v. *Turner Elkhorn Mining Co.* (1976) 428 U.S. 1, 17 [96 S.Ct. 2882, 2893, 49 L.Ed.2d 752].)

First, the interest in decreasing insurance rates can be justified through both prospective and retroactive application.[4] Petitioner disagrees by contending that insurance premiums will not decrease for voters who already have liability coverage. The formula for setting premiums is computed based on factors relative to the insured driver such as driving record, number of miles traveled and number of years of experience. These factors remain the same regardless of whether all drivers buy insurance or not. Therefore, the rates will not change. Further the rates may even increase if companies covered a lot of high-risk drivers who were formerly uninsured.

However, as an experienced insurance agent asserts, there will be a beneficial impact on insurance premiums once the insured is no longer

---

[3]These interests are equally as significant when viewing the initiative in its prospective form.

[4]Petitioner does not contend that such an interest violates due process when Proposition 213 is examined in its prospective form.

forced to pay for the uninsured's bills. This effect however cannot be achieved unless the initiative is applied retroactively. For example, an automobile insurance underwriter, following the passage of Proposition 213, who is setting rates for 1997, could take into account the reduction in potential exposure for his or her company's insured in those cases in which Proposition 213 applies. This will ensure the initiative's immediate effect. However, if not applied retroactively, the insured will continue to face exposure for general damages in claims brought by uninsured plaintiffs, ultimately delaying the beneficial effect on liability insurance rates. Therefore, retroactive application is important in effectuating this interest in reducing premium rates.

Second, the interest in restoring balance to our justice system is clearly effectuated through this initiative's prospective and retroactive application.[5] In fact, the interest cannot be effectuated unless the initiative is applied retroactively. The court system will not change until we consider *all* cases scheduled post January 1, which must include certain accidents that occurred prior to this date. As a result, petitioner concedes that a decrease in judgments would result in response to Proposition 213's passage. Litigation in general will decrease as cases will more likely result in settlement. Taxpaying, law abiding citizens will no longer need to support those who choose to break the law. Subsequently, the costs of supporting the court system will decrease. Further, applying the initiative retroactively ensures an even greater incentive to comply with California's Financial Responsibility Law, a law that even absent Proposition 213, should be followed by all drivers.

### 3. *Reliance*

Reliance upon the state of the former law is not a viable argument. Actions taken on the basis of the state of the former law should be identical to those taken in response to the new law. Petitioner alleges that retroactive applications of initiatives are generally disfavored and inherently unfair because they give no notice to those they later affect. (See *Borden* v. *Division of Medical Quality* (1994) 30 Cal.App.4th 874, 880 [35 Cal.Rptr.2d 905]; *Russell* v. *Superior Court, supra,* 185 Cal.App.3d 810, 814; *Evangelatos* v. *Superior Court, supra,* 44 Cal.3d, 1180, 1188.)

---

[5]It is clear that if found that the retroactive portion of Proposition 213 effectuates an interest in restoring balance to our justice system, so too does its prospective application.

However, long before Proposition 213 was even drafted, the State of California law had always required drivers to purchase insurance.[6] The minimum Financial Responsibility Law was held constitutional as early as 1976. (*Anacker* v. *Sillas, supra,* 65 Cal.App.3d 416.) Real parties in interest point out that in *Anacker* the court noted, "involvement in the accident does not create the obligation to be financially responsible, it merely provides the occasion for demonstrating that a preexisting obligation has been satisfied." (*Id.* at p. 422.) Therefore, at the time of petitioner's accident, he cannot contend that he had no notice that driving without insurance did not have any negative consequences. Subsequently, applying Proposition 213 retroactively cannot be deemed inherently unfair.

## B. *Equal Protection*

■ Petitioner contends that applying Proposition 213 retroactively is unconstitutional because it violates his right to equal protection under the California and United States Constitutions. We disagree.

■ "[I]t is our solemn duty to jealously guard the precious initiative power, and to resolve any reasonable doubts in favor of its exercise. . . . [S]uch measures must be upheld unless their *unconstitutionality clearly, positively and unmistakably appears.*" (*Legislature* v. *Eu, supra,* 54 Cal.3d at p. 501, italics added.)

■ Equal protection requires that persons similarly situated receive like treatment. (*Georgie Boy Manufacturing, Inc.* v. *Superior Court* (1981) 115 Cal.App.3d 217, 224 [171 Cal.Rptr. 382].) When a statute or initiative classifies individuals in a manner which involves economic rights, the rational basis test applies.[7] The test is met if: (1) the statute has a legitimate purpose and (2) the lawmakers reasonably believed the classification would promote that purpose. (*Hoffman* v. *United States, supra,* 767 F.2d 1431, 1436.) Petitioner points out and we agree that the court must conduct a serious and genuine judicial inquiry into the correspondence between the classification and the legislative goals even if we are invoking only the rational relationship test. (*Fein* v. *Permanente Medical Group, supra,* 38 Cal.3d 137, 163.)

---

[6]See Vehicle Code section 16021.

[7]Real parties in interest go through a lengthy analysis as to why strict scrutiny is inapplicable to this type of classification. However, it has long been established that challenges to economic rights are afforded the rational basis test. (*Lochner* v. *New York, supra,* 198 U.S. 45.) Such economic rights include statutes restricting the recovery of damages. (*American Bank & Trust Co.* v. *Community Hospital, supra,* 36 Cal.3d 359, 368-369.) Further, petitioner concedes that rational basis is the appropriate standard of review.

However, equal protection violations are generally not found under the rational relationship test unless the " 'classification rests on grounds wholly irrelevant to the achievement of the State's objective.' " (*Hoffman* v. *United States*, *supra*, 767 F.2d 1431, 1435.) The question therefore is not " '[w]hether *in fact* the Act will promote [the legislative objectives] . . . [but whether] . . . the Legislature *could rationally have decided* that [it] . . . might [do so]." (*American Bank & Trust Co.* v. *Community Hospital*, *supra*, 36 Cal.3d 359, 374, quoting *Minnesota* v. *Clover Leaf Creamery Co.* (1981) 449 U.S. 456, 466 [101 S.Ct. 715, 725, 66 L.Ed.2d 659].) The burden to prove such rests upon the challenger. (*Hoffman* v. *United States*, *supra*, 767 F.2d 1431, 1437.)[8]

### 1. *State interests*

As discussed in the due process analysis above the voters' interest in restoring balance to our justice system is legitimate. This includes narrower interests in encouraging compliance with California's Financial Responsibility Law, avoiding the frustration of empty judgments and preventing individuals who fail to take responsibility from seeking unreasonable damages. (See *Anacker* v. *Sillas*, *supra*, 65 Cal.App.3d 416, where the suspension of one's driving privilege was rationally related to the goal of assuring financial responsibility; *Georgie Boy Manufacturing, Inc.* v. *Superior Court*, *supra*, 115 Cal.App.3d 217, 225, fn. 4, where eliminating punitive damages only for those plaintiffs suing under survivorship statutes is a legitimate manner of addressing the "apparent concern for the danger of excessive recoveries.")

Further, the interest in reducing costs of mandatory automobile insurance is well established as legitimate. (*Fein* v. *Permanente Medical Group*, *supra*, 38 Cal.3d 137, 159 [where the court held that reducing the costs of insured motor vehicle accident defendants and their insurers is a legitimate objective].)

### 2. *Classification*

Petitioner contends that within the general classification of the uninsured, Proposition 213's retroactive application further creates subclasses that are

---

[8]Initiatives are subject to the same constitutional analysis as statutes. (See *Lesher Communications, Inc.* v. *City of Walnut Creek* (1990) 52 Cal.3d 531, 540 [277 Cal.Rptr. 1, 802 P.2d 317].)

irrational and arbitrary.[9] Petitioner labels these subclasses as: (1) the retroactive plaintiffs; uninsured motorists who didn't have the opportunity to avoid penalties; (2) The fortunate few; persons with trials between the passage of the initiative and January 1, 1997, who suffer no ill affect and (3) prospective plaintiffs; uninsured motorists with accidents occurring after January 1, 1997.

A similar contention was made by plaintiffs challenging Civil Code section 3333.2 of MICRA, which limits noneconomic damages in medical malpractice cases to $250,000. Plaintiffs argued that the statute violated equal protection because it impermissibly discriminates *within the class* of medical malpractice victims, denying a "complete" recovery of damages only to those malpractice plaintiffs with noneconomic damages exceeding $250,000. (*Fein* v. *Permanente Medical Group, supra* 38 Cal.3d at pp. 161-162.) However, our Supreme Court found this argument unavailing because "[t]he equal protection clause certainly does not require the Legislature to limit a victim's recovery for out-of-pocket medical expenses or lost earnings simply because it has found it appropriate to place *some limit* on damages for pain and suffering and similar non-economic losses." (*Id.* at p. 162, italics added.)

Further, the MICRA legislation was upheld by the Ninth Circuit where a plaintiff complained of unequal treatment between malpractice victims and other tort victims. (*Hoffman* v. *United States, supra,* 767 F.2d 1431, 1433.) In that case, the plaintiff went into the hospital seeking medical attention for an injured finger, but left the hospital as a "vegetable." If Mr. Hoffman had happened to slip on the hospital floor and subsequently suffered brain damage, the noneconomic damages cap of MICRA would not have applied.

Analogous to the MICRA legislation's classifications, it is not arbitrary for the electorate to draw a distinction between the uninsured who are affected by different dates set for trial. Those malpractice plaintiffs who happened to suffer injuries of greater than $250,000 were not afforded noneconomic damages because of the importance of addressing the malpractice insurance crisis. Subsequently, these uninsured plaintiffs who happened to have trial dates set post-January 1, 1997, should not be afforded noneconomic damages in furtherance of the interest in lowering outrageous auto insurance premiums.

Further, it is important to note that the uninsured motorists provisions apply only to those who are not in compliance with the financial responsibility laws *as required* by statute. This is distinct from malpractice victims,

---

[9]Petitioner cites to *In re Fassett* (1937) 21 Cal.App.2d 557 [69 P.2d 865], an older case where a city's ordinance limiting the number of hogs that could be raised on a hog ranch, applying only to those persons who were in business less than one year, was deemed an irrational classification.

who through no fault of their own are subject to a cap on the noneconomic damages they wish to collect. Despite petitioner's contentions that these three subclasses of the uninsured are arbitrary, it is indisputable that *all* members of the subclasses are violating the law and therefore are all susceptible to some form of penalty.

## II. *Prospective Application of Proposition 213*

### A. *Procedural Due Process*[10]

■ Amici curiae in support of petitioner contend that when applied prospectively, Proposition 213 violates due process because the initiative implements an automatic penalty scheme, allowing for no explanations or excuses. (*Bearden* v. *Georgia* (1983) 461 U.S. 660, 668-669 [103 S.Ct. 2064, 2070-2071, 76 L.Ed.2d 221]; *Rios* v. *Cozens* (1972) 7 Cal.3d 792 [103 Cal.Rptr. 299, 499 P.2d 979].)

However, both these cases cited by amici curiae are distinct from the situation at hand. In *Rios*, the Supreme Court of California struck down a Vehicle Code provision which provided for an uninsured's automatic license suspension when involved in an automobile accident. The court found due process required the uninsured motorist be given a hearing to determine his *potential culpability* prior to the suspension of his license.

Due process does not require that the uninsured be given a hearing before being denied recovery for noneconomic damages because potential culpability is not at issue. Along such lines, the First District Court of Appeal held that Vehicle Code former section 12520.5, which provides for the automatic revocation of farm labor vehicle driver certificates upon a drunk driving violation (Veh. Code, former § 23102, subd. (a)), did not require a hearing to determine potential culpability because it had already been done in the underlying criminal prosecution for drunk driving. (*Alderette* v. *Department of Motor Vehicles* (1982) 135 Cal.App.3d 174, 180 [185 Cal.Rptr. 172].)

Similarly, Proposition 213 does not put culpability up for dispute. Drivers either possess insurance or they do not. If they do not and they choose to drive (instead of using other alternative modes of transportation like public transit), we can think of no justifiable defense that would require a hearing.

Petitioner also cites to *Bearden*, where the court held that "[a] sentencing court cannot properly revoke a defendant's probation for failure to pay a fine

---

[10]Much of the due process analysis for Proposition 213 in its prospective form is analogous to that of Proposition 213 in its retroactive form (see pt. I.A., *ante*). This analysis will address only those issues specific to the prospective aspect of the initiative.

. . . absent evidence of findings that he was somehow responsible for the failure or that alternative forms of punishment were inadequate to meet the State's interests in . . . deterrence." (*Bearden* v. *Georgia*, *supra*, 461 U.S. 660, 660 [103 S.Ct. 2064, 2066].) There, the petitioner was sentenced to probation on the condition that he pay various fines. However, following his sentence, he lost his job and was unable to make the payments on time.

This case is easily distinguishable from the case at bar. In *Bearden*, petitioner's probation revocation penalty was automatically implemented if his fines were not paid. Therefore, he was entitled to be heard so that good faith attempts at earning money could be considered. Here, uninsured motorists that choose to drive can easily avoid the penalty of not being entitled to noneconomic damages, by simply choosing alternative forms of transportation. Further, if the uninsureds made any attempt at all (good faith or otherwise) to buy insurance, they would in fact no longer be subject to such a penalty. Therefore, we see no reason to entitle each uninsured driver to a hearing. We find no due process violation.

B. *Equal Protection*

As discussed *ante*, an equal protection violation for classifications involving economic rights invokes the rational basis test. The test is met if: (1) the statute has a legitimate purpose and (2) the lawmakers reasonably believed the classification would promote that purpose. (*Hoffman* v. *United States*, *supra*, 767 F.2d 1431.) Interests in (1) restoring balance to our justice system and (2) reducing costs of mandatory automobile insurance are legitimate. (See pt. I.A., *Due Process*, and pt. I.B., *Equal Protection*, *ante*.) Therefore, we address only the rational relationship between classification of the uninsured and these legitimate interests.

As previously noted, the uninsured motorist classification is rationally related to the electorate's interests in (1) restoring balance to our justice system and (2) reducing costs of auto insurance.

Classifying by eliminating the uninsured has been well established as rationally related to reducing the high costs of insurance premiums. (See *American Bank & Trust Co.* v. *Community Hospital*, *supra*, 36 Cal.3d 359, 372-373; *Fein* v. *Permanente Medical Group*, *supra*, 38 Cal.3d 137, 158-159; *Hoffman* v. *United States*, *supra*, 767 F.2d 1431, 1437.) The electorate rationally concluded that eliminating noneconomic damages to uninsured drivers is related to the goal of reducing insurance costs. As a result of classifying by eliminating the uninsured, insurance costs were predicted to decrease due to the decreased amount of settlement and verdict payments

that directly affect insurance premiums. The ballot pamphlet specified the Legislative Analyst's prediction that Proposition 213 will result in a tax revenue reduction of nearly $5 million annually, based on the 2.35 percent tax on insurers' gross premiums. Amici curiae for real parties in interest further report that these figures indicate reduced annual income to insurers—that is, reduced premiums to insureds—of some $200 million. Further, the Department of Insurance has ordered all insurers to reduce their automobile liability insurance rates in response to Proposition 213. In considering these results, it can hardly be irrational for voters to have assumed that classifying the uninsured would help to reduce premium prices.

Further, this classification is rationally related to restoring balance to our justice system. The Supreme Court upheld filing fee requirements as constitutional under equal protection principles. (*Ortwein* v. *Schwab* (1973) 410 U.S. 656 [93 S.Ct. 1172, 35 L.Ed.2d 572].) Despite such fees directly affecting one's right to participate in civil litigation, because fees assisted in offsetting the court system's expenses, they were deemed rationally related to restoring justice. (*Id.* at p. 660 [93 S.Ct. at pp. 1174-1175].)

Similarly, eliminating the amount of recovery for noneconomic damages is rationally related to restoring balance to our justice system because it results in a decrease in the amount of litigation filed. Since recovery would be limited to special damages (an easily verifiable amount that encompasses little dispute), pending matters will likely result in settlement. This will ultimately reduce the cost of supporting the court system.

Further, as Proposition 213 encourages more uninsured drivers to buy auto insurance, tax-paying and law abiding citizens will no longer be required to carry the burden of paying for those citizens that choose to directly defy the current state of the law. It was rational for the electorate to believe that a classification that eliminates the uninsured would achieve a legitimate interest in restoring balance to our justice system.

Petitioner cites particular cases where a legislature's classifications were held irrational and therefore violated the equal protection clause. However, such cases are distinct from the case at bar.

Petitioner cites to *Merlo*, one of a series of cases (including *Cooper* v. *Bray* (1978) 21 Cal.3d 841 [148 Cal.Rptr. 148, 582 P.2d 604]) that strikes

down California's guest statute[11] as unconstitutional. (*Brown* v. *Merlo* (1973) 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].) He contends that since the statute "eliminated causes of action of an entire class of persons simply because some undefined portion of the designated class may file fraudulent lawsuits" it was deemed irrational and unfair.

However, petitioner's interpretation of that case is incorrect. In both *Merlo* and *Cooper*, the statute at issue provided that injured passengers who owned the car in which they were injured were barred from any recovery against drivers who negligently caused their injuries. The statute, however, contained an exception permitting recovery for an owner-passenger's injuries that were caused by permitting a drunk driver to take the wheel. This exception ultimately forced the court to strike down the statute as unconstitutional, finding that the owner-guest classification was not rationally related to the legitimate interest in promoting automobile safety.

Distinct from the exception to the Vehicle Code in *Brown* and *Cooper*, the prospective application of Proposition 213 treats similarly situated members equally. All members of "the uninsured" class are only permitted economic damages as a form of relief. All members are prohibited from seeking pain and suffering. Thus, we must conclude that a classification eliminating "the uninsured" is rationally related to the electorate's legitimate interests.

III. *The Single-subject Rule*

▮▮▮▮ Amici curiae in support of petitioner contend that Proposition 213 is unconstitutional because it violates the single-subject rule. ▮▮▮ Article II, section 8, of the California Constitution provides, "An initiative measure embracing more than one subject may not be submitted to the electors or have any effect." (Cal. Const., art. II, § 8 subd. (d).) An initiative will generally be upheld as long as its parts are "reasonably germane" to each other and to its general purpose. (See *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 229 [149 Cal.Rptr. 239, 583 P.2d 1281]; *Harbor* v. *Deukmejian* (1987) 43 Cal.3d 1078 [240 Cal.Rptr. 569, 742 P.2d 1290].) The rule's primary purpose is to minimize voter confusion and deception. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d 208, 231.)

---

[11]Former Vehicle Code section 17158.

Confusion has often been held to result when an initiative presents a topic of excessive generality such as "public welfare" or "government." (See *Brosnahan* v. *Brown* (1982) 32 Cal. 3d 236, 253 [186 Cal.Rptr. 30, 651 P.2d 274]; *Harbor* v. *Deukmeijan, supra,* 43 Cal.3d 1078, 1098-1101.) ▇▇▇ Amici curiae in support of petitioner contend that Proposition 213's subject is "Personal Responsibility," which is too general and broad a topic to survive this rule's constraints. Further they assert that particular provisions of the measure could have confused voters on even a narrower subject of sanctioning irresponsible people who caused injuries.

However, Proposition 213 makes it clear that its primary subject is to limit recovery of noneconomic damages for those drivers that break the law. As real parties point out, this topic can be best described as one unified subject having three integrated parts: drunk drivers, uninsured drivers and drivers in commission of or fleeing from a felony. The three subparts of this topic are generally germane to the electorate's interests of restoring balance to our justice system and lowering insurance premiums.

This rationale follows our Supreme Court's decision on Proposition 103 which held that its provisions "relate generally to the cost of insurance or the regulation thereof, and all . . . at least arguably will help to achieve the goal of making insurance more affordable and available." (*Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 842 [258 Cal.Rptr. 161, 771 P.2d 1247].) Further, article XIII A of the California Constitution withstood a single-subject rule challenge, since its four separate elements still constituted provisions which were reasonably necessary to the integrated function of the statute as a whole. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d 208.)

Ultimately, prohibiting recovery of noneconomic damages for uninsured drivers, drunk drivers and drivers in the commission of or fleeing from a felony is reasonably necessary to achieve the statute's functions. We cannot find any violation of the single-subject rule and uphold the initiative as constitutional.

### DISPOSITION

The petition for a writ of mandate is denied. Real parties in interest are awarded costs on appeal.

Neal, J., concurred.

**JOHNSON, Acting P. J.**—I respectfully dissent. Because I conclude Civil Code section 3333.4 cannot be applied retroactively to bar petitioner's right

to nonpecuniary damages, I find it unnecessary to consider the other issues addressed in the majority opinion.

As discussed in the majority opinion, Proposition 213 contains a clause which purports to terminate ongoing claims for noneconomic damages filed before the proposition's passage unless they actually came to trial within the two months between that date and January 1, 1997. The case before this court falls in this category. It was filed in 1995 but, as is typical in Los Angeles, trial had not yet commenced as of the first day of 1997. In my view this attempted retroactivity provision in Proposition 213 is both ambiguous and unconstitutional, whatever the constitutionality of this proposition for lawsuits filed after January 1, 1997.

I. *The Proposition Is So Ambiguous as to Whether It Bars Nonpecuniary Damage Awards for Cases First Filed After Its Passage or for Those Already Filed Which Had Not Reached Trial by January 1, 1997, That It Cannot Be Presumed the Voting Majority of the Electorate Chose to Make the New Law Retroactive.*

In the second sentence of a paragraph labeled "Section 4. Effective date" Proposition 213 states "[i]ts provisions shall apply to all actions in which the initial trial has not commenced prior to January 1, 1997." In an effort to argue away any ambiguity in this particular sentence, the majority opinion points to the earlier and more prominent sentence contained in the language of the ballot statement. My colleagues contend this section clarifies the retroactive nature of this enactment. In my view, however, the earlier and more prominent sentence creates ambiguity and not clarity. That clause reads: "A YES vote on this measure means: Uninsured drivers . . . could *no longer sue* someone who was at fault for the accident for non-economic losses (such as pain and suffering)." The common meaning of "no longer sue" is "can no longer *file* a claim for non-economic losses" *not* that you no longer can complete a lawsuit for noneconomic losses which already has been filed. The phrase "can no longer," in turn, means "cannot after the proposition becomes law." Accordingly, in the ballot statement the voter was being told that after the proposition becomes law no one will be able to file a claim for noneconomic losses.

There is no escaping the conclusion the two sentences—one in the ballot statement far more voters read and telling them what the proposition *really* means and the other sentence at the end of the proposition itself which few voters read—are inconsistent. One says the proposition only bars *new* claims for nonpecuniary damages and the other says it bars such claims even in ongoing lawsuits unless they are brought to trial by January 1, 1997. The

conflicting sentences, in turn, create an ambiguity as to what the proposition means. As a result, it is difficult to say the words of this initiative package are "so clear, strong and imperative that no other meaning can be annexed to them" as is required to impute an intent on the part of the voters to apply such legislation retroactively. (*U.S. Fidelity Co.* v. *Struthers Wells Co.* (1908) 209 U.S. 306, 314 [28 S.Ct. 537, 539, 52 L.Ed. 804].)

This is not a case where the ballot statement simply failed to alert the voter the initiative itself, contrary to most, contained an unusual provision making it retroactive as to already filed litigation. Here the ballot statement conveys misinformation or at a minimum creates a false impression on that very question. The proponent's ballot statement only says the initiative prevents the filing of future claims for nonpecuniary damages. Meanwhile, hidden in the initiative is a single sentence purporting to apply it retroactively and thus also eliminate past claims of this nature. It is entirely possible the proponents of this proposition were merely careless in drafting the ballot statement language creating this erroneous impression about what the proposition would do. But if the electorate is told they are voting for one kind of provision in a ballot statement and the proposition contains contrary language, especially as to issues as vital and constitutionally sensitive as retroactivity, the initiative process no longer can fulfill its important role as the ultimate expression of popular will. Instead it will be open to misuse as an instrument for confusing the electorate and producing counterfeit expressions of the voting public's choices. Thus, in order to protect and preserve the integrity of the initiative process the courts must be ever vigilant against the kind of inconsistency between ballot statement and proposition language found in this case.

II. *Assuming the Proposition Is Clearly Intended to Be Retroactive, It Would Be Unconstitutional to Terminate Retroactively Petitioner's Vested Right.*

In the nearly 150 years of California's history, and under the common law for centuries before that, all people injured as petitioner was have been entitled to damages in "the amount which will compensate for *all* the detriment proximately caused" them by another's negligent (or reckless or intentional) act.[1] Proposition 213 changed all that for those unable or unwilling to buy auto liability insurance (as well as drunk drivers and fleeing

---

[1] The current statutory expression of this common law right is found in Civil Code section 3333, originally enacted in 1872. "For the breach of an obligation not arising from contract, the measure of damages, . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." (Civ. Code, § 3333.)

felons), denying them any compensation for "non-pecuniary" detriment they might suffer as victims of another's wrongful (including criminal) acts arising out of the operation or use of a vehicle. (Civ. Code, § 3333.4, subd. (a)(2)-(3).)

This change in the law took away the long-standing right to recover nonpecuniary damages for over one-quarter of California's motorists[2] and over one-third of those in Los Angeles County[3]—literally millions of people. Accepting the majority's interpretation of the voters' intent, Proposition 213's changes "shall apply to all actions in which the initial trial has not commenced prior to January 1, 1997." Thus, included in the millions Proposition 213 embraces is a small subset of uninsured motorists who had not only suffered their injuries in vehicle accidents occurring in the period before the voters passed Proposition 213 but who had filed lawsuits before that date and included claims for nonpecuniary damages. For these people, the change applies retroactively. Petitioner is one of this unfortunate few.

Due process does not permit retroactive application of a law which deprives a person of a "substantive (or vested) right" as opposed to a mere "procedural right" in violation of due process. (*Roberts* v. *Wehmeyer* (1923) 191 Cal. 601, 612 [218 P. 22]; *In re Marriage of Buol* (1985) 39 Cal.3d 751, 756 [218 Cal.Rptr. 31, 705 P.2d 354]; *Wexler* v. *City of Los Angeles* (1952) 110 Cal. App.2d 740, 747 [243 P.2d 868], distinguished on another point in *Leupe* v. *Leupe* (1942) 21 Cal.2d 145, 148 [130 P.2d 697]; *Coombes* v. *Getz* (1932) 285 U.S. 434 [52 S.Ct. 435, 76 L.Ed. 866].) As Witkin explains: "A retrospective or retroactive law is not invalid *as such* . . . [¶] Such a law is invalid, however, . . . if it deprives a person of a *vested* right or substantially impairs such right, thereby denying *due process*." (7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 486, p. 675.) But deciding whether retroactivity offends due process also requires the balancing of several factors. "In determining whether a retroactive law contravenes the due process clause, we consider such factors as the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions." (*In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371], holding clarified in

---

[2]California Department of Insurance Statistical Analysis Bureau, Commissioner's Report on Underserved Communities (Feb. 1995) at page CA-1. The bureau reported 27.75 percent of vehicles registered in California were uninsured in 1995.

[3]California Department of Insurance Statistical Analysis Bureau, Commissioner's Report on Underserved Communities, *supra*, at page LA-7. The bureau reported 37.11 percent of vehicles registered in Los Angeles County were uninsured in 1995.

*Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1208-1209 [246 Cal.Rptr. 629, 753 P.2d 585] [courts should presume legislative enactments should only be applied rospectively]).

I begin with an inquiry about just what sort of right new Civil Code section 3333.4 eliminates.

### III. *The Right to "Non-Pecuniary" Damages Is a Vested Right Entitled to Protection From Retrospective Deprivation.*

What Proposition 213 characterizes as "non-pecuniary" damages represents the entirety of what society has decided is the best it can do when someone suffers injury to his or her personhood, his or her very being. The rest, the so-called "pecuniary" damages just replace the money the injured party lost because of what the guilty party did to him or her—chiefly the hospital bills to be paid and the wages the injured party is unable to earn while recuperating. But if the injured person writhes in pain for months or years in a burn ward, or is blinded or loses a limb or turned into a quadriplegic, or loses most of his intellect or even becomes a human "vegetable" because of brain damage, or suffers any of a thousand other personal horrors, because of another's negligence or worse—"non-pecuniary" damages provide the *only* recourse available for any of this harm.

Unlike the statutory "benefits" which some courts have held the Legislature can take away retroactively without offending due process (*Graczyk* v. *Workers' Comp. Appeals Bd.* (1986) 184 Cal.App.3d 997 [229 Cal.Rptr. 494, 58 A.L.R.4th 1245]), an injured party's chance to obtain compensation for nonpecuniary injuries from the party that caused the injury is neither a "benefit" nor statutory in origin. It is a "right" not a "benefit" and one that is a fundamental tenet of the common law. As one leading treatise explains: "The cardinal principle of damages in Anglo-American law is that of *compensation* for the injury caused to plaintiff by defendant's breach of duty. . . .

"What then is compensation? The primary notion is that of repairing plaintiff's injury or of making him whole as nearly as that may be done by an award of money. The 'remedy [should] be commensurate to the injury sustained.' '[W]hoever does an injury to another is liable in damages to the extent of that injury.' " (4 Harper, James & Gray, The Law of Torts (2d ed. 1986) Damages in Accident Cases, § 25.1, pp. 490, 493, fns. omitted.)

It is often said money cannot truly compensate this kind of pain or these kinds of losses. But this is not justification for doing away with "non-pecuniary" damages. Rather the observation simply states an undeniable

truth. Money is not an adequate substitute for the loss of a limb or its equivalent; it is just the only—or at least the best—we can do.[4] "[I]t is the aim of the law to attain at least a 'rough correspondence between the amount awarded as damages and the extent of the suffering,' or other intangible loss." (4 Harper, James & Gray, The Law of Torts, *supra*, Damages in Accident Cases, § 25.1, p. 493, fn. omitted.)

There also is an economic dimension to so-called "non-economic" damages. As noted law and economics expert Judge Richard Posner has observed, "We disagree with those students of tort law who believe that pain and suffering are not real costs and should not be allowable items of damages in a tort suit. No one likes pain and suffering and most people would pay a good deal of money to be free of them. If they were not recoverable in damages, the cost of negligence would be less to the tortfeasors and there would be more negligence, more accidents, more pain and suffering, and hence higher social costs." *(Kwasny v. U.S.* (7th Cir. 1987) 823 F.2d 194, 197.)

The majority opinion relies on a line of cases which states the Legislature may retroactively *reduce* damages or place a "cap" on damages without running afoul of the constitution. (Maj. opn. *ante*, at p. 988.) But Proposition 213 does far more than that. It eliminates recovery of *any* compensation for a major class of injuries people typically suffer in vehicle accidents, that is, injuries to the person—the pain and suffering they endure for moments or years, the emotional distress accompanying disfigurement, the lost enjoyment and increased aggravation of having to live life as a paraplegic, and like injuries. No, this proposition does not merely establish a cap on compensation for these very real injuries; it eliminates such compensation entirely. In effect, it says we will continue to pay you for the damage to your property interests—your medical bills and lost income—but not for the damage to your person. In my view, the right to compensation for damage to the person—and not merely the property losses which may accompany a so-called "personal injury"—is a "substantive right" and a "vested right." The loss of such a right is not merely an adjustment or a cap or a reduction in the amount of damages, but the total elimination of the species of damages most closely related to our status as human beings and not mere bill payers and workhorses.

That the voting majority which enacted Proposition 213 retains their own right to compensation for these losses, while taking it away from the

---

[4]In the barbarous era of "an eye for an eye," the victim may have gained some psychic compensation when his family revenged his lost limb or other injury by separating the assailant from his own limb or by inflicting the same pain on that person. But one of the primary functions of the system of monetary compensation and the legal system itself is to substitute an orderly transfer of money from perpetrator to victim for the violence of personal physical revenge.

unfortunate quarter or third of the population, only serves to underscore the value most people place on this right. Assuming it can be denied prospectively, this is the sort of substantive indeed fundamental right which cannot be taken away retroactively.

Petitioner's right to recover nonpecuniary damages for his past injuries is also "vested" in another sense. He had filed his action for such damages with the court long before Proposition 213 was proposed or passed. So it was not a mere inchoate right or an expectancy of compensation, but a full-blown chose in action appellant possessed. The law looks with special disfavor on statutes which purport to retroactively change substantive rights for ongoing litigation. (*Wexler* v. *City of Los Angeles, supra,* 110 Cal.App.2d 740, 747 [statutory change making father necessary party in action for child's death does not apply retroactively to mother's lawsuit]; *Morris* v *Pacific Electric Ry. Co.* (1935) 2 Cal.2d 764 [43 P.2d 276] [defendant entitled to rely on old statute making plaintiff's speed limit violation per se contributory negligence since new statute enacted after lawsuit commenced could not be applied retroactively to deprive defendant of this defense].) If defendants are entitled to retain defenses existing when lawsuits were filed against them, certainly plaintiffs should be entitled to retain the right to damages existing when they filed their lawsuits.

## IV. On Balance, Retroactive Application of Civil Code Section 3333.4 Harms Uninsured Plaintiffs Who Already Have Filed Cases More Than It Furthers the Legitimate Goals of the Legislation.

Not only is this right "vested" and of great importance to those who sought nonpecuniary damages before enactment of Proposition 213, but on balance retroactive deprivation of this right harms petitioner and like persons more than it furthers the goals of the proposition. First, assuming only prospective application of Civil Code section 3333.4, insurance rates will go down by nearly as much and nearly as quickly as they would if already filed claims for nonpecuniary damages were not allowed to proceed to trial. Insurance rates were set and already collected on the assumption uninsured motorists would still be receiving nonpecuniary damages. So there would not be any immediate reduction in insurance premiums anyway. The relatively small tail of already filed cases involving uninsured motorists will not affect future premiums substantially compared to the many thousands of such claims which will not be filed at all after the effective date of the act.

And, again assuming only prospective application, there will be just as great a decrease in uninsured motorists on our highways as there would if the law were enforced retroactively. A retroactive deprivation of the right to

recover nonpecuniary damages comes too late to affect past decisions not to obtain automobile insurance. If Civil Code section 3333.4 is to encourage more drivers to obtain auto insurance or to discourage those that do not from using their cars, it can do so only after its enactment.

On the other side of the balance, consider how fundamentally unfair it is to deprive petitioner retroactively of this substantive right to be compensated for injury to his person not just his property interests. It is unfair in the sense he lacked the opportunity to know and adjust his behavior in such a way as to avoid this loss. Had he known this was the risk of driving without insurance, he may have been able to adjust his budget enough to pay those premiums.[5] Or, alternatively, he may have elected not to drive and instead worked out some alternative means of transportation. But at the time petitioner was deciding whether to buy auto insurance instead of other necessities he had no reason to fear he would lose his long-standing right to compensation for injuries to his person as well as his property. He made that choice years before Civil Code section 3333.4 took away this long-standing right. The same is true when he decided to drive his own car without insurance instead of seeking alternative transportation. He made these irrevocable decisions before they carried consequences nearly as serious as the loss of the right to seek compensation for injuries to petitioner's person if someone injured him while he was driving his vehicle.

Retroactive application also is fundamentally unfair because petitioner filed and litigated this case for over a year—and made settlement calculations and other litigation decisions—in reliance on his entitlement to damages for injury to his person. For all we know, he may have insisted on demands he would not have made or rejected offers he would have accepted during the course of the litigation had he known this crucial form of damages would not be available to him. Thus, petitioner's "legitimate expectations . . . are substantially disregarded in favor of needless retroactivity." (*In re Marriage of Buol, supra,* 39 Cal.3d 751, 763.)

---

[5]For many if not most uninsured drivers this may not be a viable option. The California Department of Insurance reports a direct and dramatic correlation between poverty and the absence of auto insurance coverage. This is especially acute in Los Angeles County, where the *average* auto insurance premium is double that in Northern California. (Cal. Dept. of Insurance Statistical Analysis Bureau, Automobile Premium Survey (1996) Executive Summary, p. 2.) Sadly, the low-income areas often also are the high premium areas. For instance, in one zip code in South Central Los Angeles (90044) analysts found the premium for a minimum liability policy was $2,321 a year for a *safe* driver who had no points on his or her record. (*Ibid.*) Yet the average per capita income in that same zip code was $7299. Thus, even typical safe drivers living in that area who wished to drive an insured vehicle would have to pay a third of their annual income to obtain a minimal policy. Is it any wonder 67.89 percent of vehicles in that zip code are uninsured? (Cal. Dept. of Insurance Statistical Analysis Bureau, Commissioner's Report on Underserved Communities, *supra,* at p. LA-2.)

And, finally, it is unfair because the time frame was so short it was not feasible to bring his case to trial. Yet others similarly situated may through pure chance or good fortune or different geography or a kind judge have been able to commence their trials by December 31, 1996, and thus saved their substantive right to damages for injuries to the person. "If the statute operates immediately to cut off the existing remedy, or within so short a time as to give the party no reasonable opportunity to exercise his remedy, then the retroactive application of it is unconstitutional as to such party." (*Rosefield Packing Co.* v. *Superior Court* (1935) 4 Cal.2d 120, 122-123 [47 P.2d 716]; *Aronson* v. *Superior Court* (1987) 191 Cal.App.3d 294, 297 [236 Cal.Rptr. 347].)

So-called "procedural changes" ordinarily can be imposed retroactively without offending due process. (7 Witkin, Summary of Cal. Law, *supra*, Constitutional Law, § 492, p. 682.) But even such changes must allow those affected a reasonable time to protect their substantive rights. "[T]he Legislature cannot, by a purported change in procedure, cut off all remedy." (*Id.* at § 493, p. 683, citing inter alia *Lane* v. *Wilson* (1939) 307 U.S. 268 [59 S.Ct. 872, 83 L.Ed. 1281], holding it was unconstitutional to enact a statute giving African-Americans only a 12-day period to register or lose their right to vote.) If retroactive procedural changes are unconstitutional when they fail to allow sufficient time to protect substantive rights, a fortiori, retroactive changes in substantive law are unconstitutional if they provide those affected an inadequate time to save their existing rights.

For these reasons, I would issue the writ and require the trial court to admit evidence and instruct on nonpecuniary damages. In my view, the two problems of constitutional infirmity and conflict between ballot statement and initiative language reinforce each other. The obvious unfairness underlying that infirmity makes it still more doubtful a majority of voters knowingly chose to change the rules for ongoing litigation. So it is even more reasonable to strip Proposition 213 of its retroactivity on that ground alone. Simultaneously, the initiative package's ambiguous message renders it less likely a decision to rule the attempted retroactivity provision unconstitutional would contravene the electorate's true intent.

On November 18, 1997, the opinion was modified to read as printed above.